A. Q. CAMERON, Respondent, v. THE PACIFIC EXPRESS COMPANY, Appellant.

### Kansas City Court of Appeals, January 18, and February 8, 1892.

Principal and Agent: MISTAKEN ACTION WITHIN AGENCY: MALICIOUS PROSECUTION. Where an agent, as for instance an express agent is charged with the duty of protecting property and collecting charges thereon, attempts to collect such charges on such property unlawfully taken without payment of the charges, and in such attempt as such agent mistakenly institutes a criminal prosecution without probable cause, the principal will be liable in an action for malicious prosecution, though, where the agent acts as a citizen and for the purpose of vindicating justice, the rule is otherwise.

*Appeal from the Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

THIS is an action for damages for malicious prosecution, brought against the defendant and one A. B. Ellison. After the testimony was introduced, respondent dismissed as to Ellison, and the cause proceeded against the Pacific Express ·Company and resulted in a judgment in favor of the plaintiff. Defendant brings the case here.

The facts disclosed at the trial, pertinent to this appeal, are substantially as follows: About the third day of December, 1888, a package was shipped from St. Louis, through the Pacific Express Company, to Bell & Cameron, having their headquarters, for the time being, at Carthage, Missouri. It. was a package of merchandise to be paid for on delivery, marked C. O. D., the collection amounting to $7.50. As soon as the package arrived at the company's office in Carthage, Ellison, who was the local agent, sent through the post office at Carthage a notice to Bell & Cameron advising them of the fact that the package had arrived, and that the amount of collection and charges was $7.75. On the fifth day .of December Cameron went to the office, and, finding a boy in charge of the same, procured the package without paying the collection, by simply paying the charges for carrying the goods from St. Louis to .Carthage. Ellison, the agent of the express company, was absent from the office at the time. Bell & Cameron left Carthage shortly after receiving the package, and on Ellison's return he instituted inquiries as to their whereabouts, and in a few days located them at Pierce City, Missouri. After an ineffectual attempt to get them to pay the C. O. D. charges to him, Ellison went to the assistant prosecuting attorney and after consulting with him about the facts in the case an affidavit for the arrest of Bell & Cameron was prepared and sworn to by Ellison and filed with the justice of the peace of Jasper county, December 15, 1888. The affidavit charged Bell & Cameron with

obtaining the goods by means *of* a trick, a fraud and deception. On this affidavit a warrant was issued by the justice, and the parties, Bell & Cameron, were arrested at Pierce City and brought back to Carthage, where they entered into a recognizance for their appearance before the justice to answer the charge; and on the twenty-fourth of December the prosecution was dismissed by the prosecuting attorney of Jasper county. These criminal proceedings were instituted by Ellison, without the knowledge of any of the officers of the company; and the first information that any of the officers of the company had as to the criminal proceedings was obtained by them at the time of the bringing of this suit and the service of the papers. It was shown on the trial that Ellison's employment as local agent at Carthage was simply for the purpose of receiving, keeping and handling the goods shipped by the express company and collecting charges thereon; that he was employed for no other purpose; that he had no express authority to institute criminal prosecutions, and that he instituted this criminal prosecution of his own volition.

At the conclusion of the evidence for plaintiff, defendant company asked a demurrer to the evidence, which was overruled; and at the conclusion of all the evidence the company renewed its demurrer, which was again overruled. The sole question for determination in this court is, as to whether the company can be held responsible for the criminal prosecution instituted by Ellison.

*Thomas & Hackney*, for appellant.

The criminal prosecution instituted by Ellison was not the act of the express company. Ellison was employed simply for the purpose of receiving and handling goods shipped by the company to and from

its local office at Carthage. He had never been authorized by the company to cause the arrest and criminal prosecution of any person for crime or supposed crime, and the company never, in any manner, ratified his unauthorized wrongful acts in causing this arrest. In making the affidavit, causing the warrant to be issued and the plaintiff to be arrested and prosecuted, Ellison was acting on his individual responsibility, and entirely outside of the range and scope of his authority and outside of the line of his duties as the agent of the company. *Pressley v. Railroad,* 11 Am. & Eng. R. R. Cases, 227; *Carter v. Machine Co.,* 51 Md. 290; s. c., 34 Am. Rep. 311; *Mali v. Lord,* 39 N. Y. 381; *Gilliam v. Railroad,* 70 Ala. 268; s. c., 15 Am. & Eng. R. R. Cases, 138; *Porter v. Railroad,* 41 Iowa, 358; *Springfield v. Engine & Thresher Co.,* 25 Ill. 106; *Edwards v. Railroad,* L. R. 5 C. P. 445; *Allen v. Railroad,* 6 Q. B. L. R. 65.

*W. W. Mossman,* for appellant, in an extended argument cited the following additional authorities: Wood's Law Master & Servant, pp. 524-577; *Garretzen v. Duenckel,* 50 Mo. 104; 11 Am. Rep. 405; *Carter v. Railroad,* 8 Am. & Eng. R. R. Cases, 347; *Casgrave v. Ogden,* 49 N. Y. 255; s. c., 10 Am. Rep. 361; *Dundas v. Railroad,* 64 N. Y. 129; *Phelan v. Stiles,* 43 Conn. 426; *Limpus v. London, etc., Co.,* 1 H. & C. 526; *McClenaghan v. Brock,* 5 Rich. L. (S. C.) 17; *Walker v. Co.,* L. R. 5 C. P. 640; *Marian v. Railroad,* 59 Iowa, 428; *Wetmore v. Railroad,* 19 Ohio St. 110; *Tolchester, etc., Co. v. Steinmeier,* 8 Lawyer's Rep. Annotated [Md.] 846; Ewell's Evans on Agency [2 Eng. Ed.] 84; *Gillett v. Railroad,* 55 Mo. 315; s. c., 17 Am. Rep. 653; *Miller v. Railroad,* 8 Neb. 219; *Rounds v. Delaware, etc., Co.,* 64 N. Y. 129; *Isaacs v. Railroad,* 47 N. Y. 122; *Evansville, etc., Co. v. Baum,* 26 Ind. 70; *Steamboat Co. v. Railroad,* 24 Conn. 40; *Goddard v. Railroad,* 57 Me. 202.

*J. D. Perkins*, for respondent.

(1) The question of whether or not Ellison, the agent, was acting within the general scope of his agency and implied authority from the express company at the time he procured the arrest and prosecution of respondent, was a question of fact to be determined by the jury under proper instructions from the court. *Rounds v. Railroad*, 64 N. Y. 129 ; *Jackson v. Railroad*, 47 N. Y. 274 ; *Mott v. Ice Co.*, 73 N. Y. 543 ; *McKinzie v. McLeod*, 10 Bing. 385 ; *Railroad v. Donahoe*, 56 Texas, 162 ; *Reilly v. Railroad*, 94 Mo. 600 ; *Railroad v. Harris*, 2 Pac. Rep. 369. (2) Corporations are liable for the acts of their servants while engaged in the business of their employment, in the same manner and to the same extent that individuals are liable under like circumstances. *Bank v. Bank*, 10 Wall. 645 ; *Bank v. Graham*, 100 U. S. 702 ; *Boogher v. Life Ass'n*, 75 Mo. 319 ; *Railroad v. Harris*, *supra* ; *Rounds v. Railroad*, 64 N. Y. 129 ; *Pennsylvania Co. v. Weddle*, 100 Ind. 138 ; 26 Am. & Eng. R. R. Cases, 120 ; *Lynch v. Railroad*, 90 N. Y. 77 ; *Garretzen v. Duenckel*, 50 Mo. 104 ; *Railroad v. Randall*, 40 Kan. 421 ; *Mfg. Co. v. Boyce*, 36 Kan. 350 ; *Meysenberg v. Engelke*, 18 Mo. App. 346 ; 3 Wait, sec. 13 ; *Eads v. Railroad*, 43 Mo. App. 536 ; *Mott v. Ice Co.*, 73 N. Y. 543. (3) If the agent is engaged in his master's business and acting within the general scope of his agency, and while so engaged commits a wrongful or malicious act with reference to or in aid of that business, the law implies that the act was authorized by the master, and he will be held responsible therefor. *Arasmith v. Temple*, 11 Ill. App. 39 ; *Pennsylvania Co. v. Weddle*, 100 Ind. 141 ; *Ricord v. Railroad*, 15 Nev. 165 ; 2 Am. & Eng. R. R. Cases, 394 ; *Railroad v. Cheatham*, 37 Am. & Eng. R. R. Cases, 282 ; *Railroad v. McMahan*, 103 Ill. 485.

ELLISON, J.—This case has been well presented by the counsel on both sides, and our conclusion is to uphold the action of the trial court in refusing defendant's demurrer to the evidence and submitting to the jury the question, whether defendant was liable for this particular act of its agent?

We may concede, in a general way, that the local agent for the defendant company, without express authority, had no power to represent, and would not represent, the company in arresting or procuring the arrest of one whom he has ground to believe has stolen the company's property, though it was property under his charge. In doing such act the agent acts in response to his duty as a citizen to see that public justice is done by punishing the offender. He, by such an act, does not in theory of law seek to punish the supposed thief because he has wronged the company, but because he has wronged the state. In *Allen v. Railroad*, 34 Victoria, 65, the plaintiff, in purchasing a ticket, got into a dispute with defendant's ticket agent by refusing to accept two French coins which the agent gave him in change. He reached over the counter and attempted to get his hand into the till and take out a penny instead of the French coins. The agent seized him and had him arraigned on a charge of *attempting* to rob the till. The judgment was for the railway company, the court holding that there was no implied authority in an agent having custody of property to take steps for the punishment of the supposed offender. And that " the act of punishing the offender is not anything done with reference to the property ; it is done merely for the purpose of vindicating justice." To the same effect are the cases of *Carter v. Machine Co.*, 51 Md. 290 ; *Mali v. Lord*, 59 N. Y. 381.

So it was also very properly held in *Gilliam v. Railroad*, 70 Ala. 268, that a conductor, who stopped his train near plaintiff's house, and who, pistol in hand, entered the house and forcibly took plaintiff's son,

placed him aboard the train and carried him to the next station, was not representing the company, unless he had express authority or the act was subsequently ratified. These cases, among others of a kindred nature, are cited by defendant's counsel, and we have no war to make on the principles they announce. But our opinion is that they fail to sustain the case made here against defendant.

This case shows that Ellison was defendant's local agent in charge of its office and property at Carthage; that it was his duty to receive and deliver packages for transportation, and to collect charges thereon. This much is plain; but what may properly be regarded as within the legitimate scope of such duties is a question of mere difficulty. "While, on the one hand, it is right to consider the agents and servants of corporations as clothed with liberal discretion in the exercise of the authority given them, and to hold the corporations liable for all acts done within the limits of that discretion, on the other hand it is but just and right that corporations and their innocent stockholders should not be made to suffer the consequences of the wrongful acts of such agents and servants acting beyond the limits of their authority. *Carter v. Machine Co.*, *supra*.

I have not the least doubt, that when the agent found that plaintiff had taken the property from the defendant's office without paying the charges it was his duty resulting from his implied authority, either to seek and obtain payment of the charges, or to seek and regain possession of the package. If the agent had been in the office at the time it would unquestionably have been his duty as such agent, to have resisted plaintiff's taking the package without payment, and, if necessary to a successful resistance, to have called an officer to his aid. But counsel makes a distinction between the authority to resist a taking of the property and authority to regain possession *after* it is taken.

While I will readily agree that, after the crime is committed, the agent has no implied authority to act for defendant in redressing the public wrongs, neither would he have such authority *while* the crime is being committed, for his agency has nought to do with the crime as a crime. It relates solely to the property, and whatever he should do in the way of preventing the crime would be an incident merely to protecting the property. And I, therefore, find myself unable to allow the distinction stated, as it may relate to the property. If the agent, upon learning that the package had been taken, had found plaintiff in the act of leaving Carthage, would it not have been his duty to defendant to have either replevied the property or sued out an attachment for the charges? Should he hold his hands and make no effort to save his principal? I think that in such a case he has an implied authority to regain control of the property, and I believe this conclusion is supported by the foregoing authorities cited to us by the defendant. In *Allen v. Railroad, supra*, Justice BLACKBURN says: "While not expressing an opinion on the matter, that if the clerk had reason to believe that the money had been actually stolen, and he could get it back by taking the thief into custody, and he took him into custody *with a view of recovering the property* taken away, it might be that that also might be within the authority of the person in charge of a till." That judge further said that there was a marked distinction between an act done for the purpose of protecting property or recovering it back and an act done for the purpose of punishing an offender for an act already done. So, in *Carter v. Machine Co., supra*, the court said that, "if property be intrusted to an agent or servant for sale or safe keeping, there is clearly an implied authority to do all such things as may be proper and necessary for the protection of that property; and for all acts done

within the scope of the employment and the limits of the implied authority, the master is liable however erroneous, mistaken or malicious such acts may be."

I will not enter here upon an examination of the authorities collected by the plaintiff's counsel, in support of the action of the trial court in submitting the extent of the authority of defendant's agent to the jury as a question of fact; they will be found in his brief. But it must be remembered, in the consideration of this case, that the evidence shows beyond question that the object which the agent had in view in procuring the arrest of plaintiff was not to vindicate public justice but was a means he adopted to recover for defendant's property or the charges thereon; as witness the following telegrams and letters sent by him to officers at Pierce City, Missouri:

."CARTHAGE, 14.

"*A. T. King:—*

"They knew they were defrauding a boy when they took C. O. D. package out of office, and I consider it stealing. *If they refuse to settle,* arrest them, and bring them back or I will send a man for them.

"·A. B. ELLISON."

"CARTHAGE, MISSOURI, 12–13–'88.

"*To City Marshal Pierce City, Mo.:—*

·"Arrest Bell & Cameron. Warrant will be sent this evening. Will send man down this evening. *but if they will square up, do it on the quiet,* and let me know.                    A. B. ELLISON."

"CARTHAGE, Mo., December 15, 1888.

"*R. J. Chappel, Pierce City, Mo.:—*

"Costs so far in Bell & Cameron case, $5.15, with $7.75 added makes total $12.90; add to this your charges for your work, and if they will pay the amount it will not be necessary to bring them down. Answer what they say.

"A. B. ELLISON."

" PACIFIC EXPRESS COMPANY,
  " A. B. ELLISON, Agent.
  " CARTHAGE, Mo., December 15, 1888.
" *To Mr. King, Constable, Pierce City :—*

" DEAR SIR :—Bell & Cameron, lightning-rod men, put up at Decatur House, owe me $7.75 for a C. O. D. package which they picked up and went out of this office with last week, without paying for ; circumstances are such that it can be made a criminal act, *which it may be necessary to do to get my money.* I wish you to see the parties before they leave town and ask them if they have remitted me, and if they have not proceed against them in my name as agent, and collect the bill, adding your expenses to the amount which I guarantee. If you wish to communicate with me go to the telegraph office, and have the operator call me up, as I am in the office here. Please let me know to-morrow what you do.

" Yours,
" A. B. ELLISON,
" Agent."

Plaintiff, having shown that defendant's agent was acting within the scope of his implied authority in attempting to collect the charges due, or to recover the property, the defendant is responsible for his acts which are directed to that end, though they may be ineffectual or mistaken efforts, or though they be wilful and malicious.

The judgment will, therefore, be affirmed. All concur.