WINN & LOVETT GROCERY COMPANY, *et al.,* v. MARY ARCHER, *et vir.*

171 So. 214.

Opinion Filed November 24, 1936.

310

*Kay, Ragland & Kurz,* for Plaintiffs in Error;
*Will O. Murrell,* for Defendants in Error.

DAVIS, J.—Mary Archer, joined by her husband, A. E. Archer, instituted this action at law against Winn & Lovett Grocery Company for assault and battery and false imprisonment. The jury returned a verdict in favor of the plaintiff and assessed her damages at $1,250.00. From the resultant judgment defendant has taken writ of error to this Court.

The case went to trial on the fourth count of plaintiff's second amended declaration and upon three second amended counts of said second amended declaration. Such several counts of the declaration upon which the trial was had are substantially as follows:

"That on or about the 27th day of May, A. D. 1933, the defendant operated a store at or near Main and Eighth Streets in the City of Jacksonville, Duval County, Florida, known as Lovett's Groceteria. That on said date plaintiff made a purchase of certain goods from the defendant in said store and that after plaintiff had made said purchase, the defendant, by and through its agent, servant and employee, who was then and there acting in the course of his employment, to-wit: A Checker Clerk who was then and there employed in and about the business of the defendant in the operation of a Groceteria located near Eighth and Main Streets in said City, and whose duty it was to protect the defendant's goods in this, to-wit: said duty was to receive, ascertain, check, count and. add costs of articles of merchandise selected by patrons for payment and final removal from said store and allow such removal after payment thereof; wrongfully and unlawfully advanced upon the plaintiff in a threatening manner and then and there assaulted the plaintiff in this, to-wit: by then and there grabbing and holding the plaintiff and forcing the plaintiff to exhibit an article which the defendant, acting as aforesaid, falsely alleged that the plaintiff had taken from the defendant's said store without having paid therefor; to the damage of the plaintiff in the sum of twenty-five thousand dollars." * * *

"That on or about the 27th day of May, 1933, in the City of Jacksonville, Duval County, Florida, the defendant, by and through its agent, servant and employee, who was then and there acting in the course of his employment, wrongfully and unlawfully assaulted and beat the plaintiff; to the damage of the plaintiff in the sum of Twenty-five Thousand Dollars.

"That at said time the defendant operated a store in the

City of Jacksonville known as Winn & Lovett Grocery
Company, located near Eighth and Main Streets in said
City, and that on said date plaintiff had to make purchases
in said store, and that said assault and battery was com-
mitted upon the plaintiff by one of the clerks in said store,
whose duty it was to protect the defendant's goods in said
store and to secure payment for goods taken therefrom by
patrons, to compel plaintiff to surrender an article alleged
to have been taken by her from the said store without pay-
ing the defendant therefor. * * *

"That on or about the 27th day of May, 1933, the defend-
ant operated a store in the City of Jacksonville, Duval
County, Florida, known as Winn & Lovett Grocery Com-
pany, located near Eighth and Main Streets in said City,
and that on said date plaintiff made a purchase of certain
goods from the defendant in said store, and that after plain-
tiff had made said purchase, the defendant, by and through
its agent, servant and employee, who was then and there
acting in the course of his employment, namely, one of the
defendant's clerks in said store whose duty it was to pro-
tect the defendant's goods in said store and to require and
receive payment for any of said goods taken from said
store, wrongfully and unlawfully advanced upon the plain-
tiff in a threatening manner and then and there assaulted
the plaintiff and forced the plaintiff to exhibit an article,
which the defendant, acting as aforesaid, falsely alleged
that the plaintiff had taken from the defendant's store with-
out having paid therefor; to the damage of the plaintiff in
the sum of Twenty-five Thousand Dollars. * * *

"That on or about the 27th day of May, 1933, the defend-
ant was the operator of a store in the City of Jacksonville,
Duval County, Florida, known as Winn & Lovett Grocery

Company, located near Eighth and Main Streets in said City; that on said date the plaintiff entered said store and made certain purchases of defendant therein; that immediately after the plaintiff had left the defendant's said premises the defendant, by and through its agent, servant and employee, who was then and there acting in the course of his employment, namely, one of the defendant's clerks in said store whose duty it was to protect the defendant's goods in said store and to require and collect payment therefor of persons removing the same, forcibly and wrongfully and unlawfully detained the plaintiff and wrongfully and unlawfully compelled the plaintiff to return to said store against her will until the plaintiff had satisfied the defendant, acting as aforesaid, that she had not taken from said store an article without having paid therefor, as was claimed of said clerk; to the damage of plaintiff in the sum of Twenty-five Thousand Dollars."

It is contended that the several counts of the declaration, and each of them, were bad in substance and subject to the general demurrer interposed thereto which was overruled. As to the first three counts hereinbefore set forth it is sufficient to say that the counts severally contain every essential allegation required to be set forth in the statutory form of pleading assault and battery and false imprisonment prescribed by Section 4314 (24) C. G. L., 2648 (24) R. G. S., to be used in actions for wrongs independent of contract' when sued for in the courts of this State.

An assault is any intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. 5 C. J. 615. The elaboration in plain-

tiff's declaration of the specific surrounding circumstances relied upon. by him to sustain his suit against a corporation for assault and battery and false imprisonment, with the special object of showing on the face of the plaintiff's own pleading that the corporation's clerk charged with committing the wrong sued for was acting at the time thereof within the scope of employment in so doing, is not only not to be condemned, but is commended as proper practice, and will not be held to render the declaration demurrable where there is contained in the declaration every of the statutory allegations required by the statutory form of pleading prescribed by Section 4314 (24) C. G. L., *supra.* Indeed the use of the statutory form with appropriate modifications to identify the time and place of the wrong complained of is entirely sufficient, even as against a defendant corporation.

The attack on the last quoted count is on the ground it shows that the alleged wrong was committed outside the defendant's store, after the goods had passed out of defendant's custody and possession and that therefore defendant corporation was not liable unless it gave express authority to do the act or subsequently ratified the act.

The count complained of does not allege that the wrong was committed wholly outside the store. It alleges that after plaintiff was stopped outside the store by defendant's employee, she was unwillingly returned to the inside of the store where she was detained until defendant was satisfied that plaintiff had not taken the goods. The important thing to consider is not whether the alleged wrong was committed inside or outside the store, but whether the employee by his conduct as pleaded was attempting to protect the property of the company or to vindicate public justice.

There is a marked distinction between a false imprisonment or arrest caused by an agent for the purpose of pro-

tecting property, or recovering it back, and an arrest or imprisonment caused for the purpose of punishing an offender for an act already done. Ordinarily there is no implied authority in a servant having the custody of property, to take such steps as he thinks fit to punish a person who he erroneously supposes has committed a crime against the property, and the trend of decision is against holding the master liable when the arrest has been made after the supposed crime has been committed, and not for the protection of his property or interests. In such cases the agent is presumed to have acted on his own account, for the vindication of justice, since his agency relates solely to the property, and the act of punishing the offender is not anything done with reference to it. Baltimore, C. & O. R. Co. v. Ennalls (1908), 108 Md. 75, 16 L. R. A. (N. S.) 1100, 69 Atl. Rep. 638; Daniels v. Atlantic Coast Line R. Co. (1904), 136 N. C. 517, 48 S. E. Rep. 816, 67 L. R. A. 455, 1 Ann. Cas. 718; Allen v. London & S. W. R. Co. (1870), L. R. 6, Q. B. (Eng.) 65, 40 L. J. Q. B. N. S. 55, 23 L. T. N. S. 612, 19 Week. Rep. 127, 11 Cox, C. C. 621; Abrahams v. Deakin (1891) 1 Q. B. (Eng.) 516; 60 L. J. Q. B. N. S. 238, 63 L. T. N. S. 690, 30 Week. Rep. 183, 55 J. P. 212 C. A.

However, there is clearly an implied authority to do all things that may be proper and necessary for the protection of the property (Carter v. Howe Mach. Co. [1879], 51 Md. 290, 34 Am. Rep. 311); and it has been held that where a servant has reason to believe that property has actually been stolen, and that he can recover it by taking the supposed thief into custody, and the evidence shows beyond question that the object which the servant had in view in procuring the arrest of the plaintiff was not to vindicate public justice, but to recover the property, or charges due thereon, the

servant is acting within the scope of his employment and the limits of the implied authority, and the master is liable, however erroneous, mistaken, or malicious the act may be. Cameron v. Pacific Exp. Co. (1892), 48 Mo. App. 99. See Allen v. London & S. W. R. Co. (1870), L. R. 6 Q. B. (Eng.) 65, 40 L. J. Q. B. N. S. 55, 23 L. T. N. S. 612, 19 Week. Rep. 127, 11 Cox C. C. 621. For other cases holding that the employer is liable when an employee falsely arrests a person in protecting the property of the principal or corporation when the person falsely arrested had none of the property, see Field v. Kane, 99 Ill. App. 1; Knowles v. Bullene, 71 Mo. App. 341; Staples v. Schmid, 18 R. I. 224, 26 Atl. Rep. 193, 19 L. R. A. 824.

It seems, under the authority of the cases mentioned above that the count last discussed was sufficient as an allegation of the facts to make out a *prima facie,* actionable, case of false arrest.

It is also contended that this count should have alleged that the goods were defendant's and that the detention of plaintiff was unreasonable. The count sufficiently alleged that the goods were defendant's by stating that plaintiff made certain purchases in the store, and by further alleging that plaintiff was detained until defendant was satisfied that she had not taken any article from the store without paying for it.

It is undoubtedly true that in order to recover for false arrest of the person, it must be shown that the restraint was unreasonable and such as was not warranted by the circumstances. Jacques v. Childs Dining Hall Co., 244 Mass. 438, 138 N. E. Rep. 843, 26 A. L. R. 1329. It was said in that case:

"It may be assumed—indeed, it is not denied—that the plaintiff knew that she must pay for her luncheon before

leaving the restaurant, and the defendant undoubtedly had the right, if apparently she had not paid, to detain her for a reasonable time to investigate the circumstances. But if she was detained for an unreasonable time, or in an unreasonable way, she is entitled to recover."

We think, however, that this count sufficiently alleges unreasonable conduct on the part of defendant's clerk by charging that he forcibly, wrongfully and unlawfully detained plaintiff under the circumstances shown.

The evidence shows in substance that on Saturday, May 27, 1933, plaintiff was doing some grocery shopping in Jacksonville. She left home about three o'clock in the afternoon and went to Setzer's Grocery Store where she purchased a bag of groceries. The bag contained some macaroni, soap and other articles. She then went to Winn & Lovett's Groceteria near Eighth and Main Streets where she made additional purchases. On Saturdays, there was a female employee (check girl) stationed in front of Lovett's Groceteria, just past the entrance. Her duty was to keep for patrons packages that had been purchased elsewhere and brought into Winn & Lovett's store, until the patrons had completed their purchases in the latter store, at which time the patrons would be allowed to retrieve their packages from the "check" girl and depart. On the day of the alleged wrong sued for, after plaintiff had made her selections, she was checked out by the Check Clerk, who put all her purchases in a bag for her. She paid the Cashier, and started out into the street. Thereupon a delivery boy of the store, sent by the Check Clerk, went after her, stopped her and asked her to come back in the store. He suggested to plaintiff that there was some question as to whether she had taken some things out of the store without paying for them. Plaintiff thereupon returned into the store. Upon entering

the store, the delivery boy and the Check Clerk took plaintiff to the back of the store and put her in a small dark room, which had formerly been a ladies' toilet, but had been transformed into some kind of an office. The boy kept her in there with the door shut and watched her while the Check Clerk went out to find a policeman, and after the Check Clerk had come back with a policeman, and after all three men had questioned plaintiff while she was under detention, they decided to take her over to Setzer's store to see if the goods she claimed had been purchased at Setzer's were in fact purchased there. At the instance of defendant's employees the policeman took plaintiff over to Setzer's store and found that it was true that plaintiff had purchased the goods there as she claimed. The policeman then reported the fact back to the Check Clerk, and the latter said they would just let the matter drop. When plaintiff got back home it was five o'clock.

Plaintiff testified that when she went into Lovett's Groceteria, she checked her package that she had purchased at Setzer's store with a girl who was placed in defendant's store for that purpose; that after she had made her purchases in Lovett's Groceteria and paid for them, she got the package that she had left with the girl at the check-your-parcel counter and left the store. She testified that when the delivery boy came out to get her to go back into the store he accused her of stealing some soap. This accusation was publicly repeated several times, both in and out of the store. She went back into the store. She further testified that when the delivery boy and the Check Clerk took her to the back part of the store, the Check Clerk took her by the arm and pushed her into a little dark room, accusing her of stealing some soap and talking cross to her. She was 63 years of age and had never stolen anything in her life. The

boy kept her in that dark, little room closely confined for about twenty minutes until defendant's Check Clerk could find a policeman. The policeman came and said he would have to take her to Setzer's. They humiliated her before that large crowd of Saturday shoppers by having her accompany the policeman to Setzer's store to see if she had purchased the things there that she claimed she had. All of this made plaintiff sick, she cried, went to bed for two days and had to consult a physician. She denied having any limes or lemons in her packages on that day.

The Check Clerk and the delivery boy both denied that they accused plaintiff of stealing some soap, but said they told her that they thought she had some goods she hadn't paid for. They denied pushing her into the dark, little room or touching her at all, and denied using abusive or quarrelsome language to her, but admitted that she was put in the dark, little room and kept there until the policeman could be secured. They said it took only about five minutes instead of twenty to get a policeman there. They said it was at plaintiff's suggestion that they go to Setzer's store. They did accuse her of stealing a few limes and lemons, which they claimed they found in her bag, but which she denied. They said plaintiff did not check the package purchased at Setzer's with the girl at the entrance of Lovett's Groceteria until after she had taken it inside the rail, when she put some things in it, then checked it with the check girl, then went inside the rail again and made her purchases.

The jury resolved the issues of fact against the defendant by finding a verdict for the plaintiff which the trial court refused to disturb. It is evident from the statement of the facts testified to that if plaintiff's version of what happened was true that plaintiff was entitled to recover a

judgment for such damages at least as would compensate her for her injury.

But the contention is made by plaintiff in error that in addition to compensation for her injury, plaintiff was unlawfully allowed to have a recovery against defendant for punitive damages, which latter kind of damages cannot be recovered because defendant is a corporation and nothing has been alleged in the declaration to show corporate authorization or ratification of the wrong done by the corporation's servant.

That proposition is raised by an exception taken to the refusal of the trial judge to give the following requested charge to the jury:

"I charge you further, gentlemen of the jury, that under the pleadings and evidence in this case, plaintiff is not entitled to recover exemplary or punitive damages and that her recovery is confined to damages actually sustained, for pain, suffering and loss of time to the date of the filing of this suit," and by an exception noted to the giving of a charge that such damages would be allowable in the case at bar, at the discretion of the jury.

The result of the modern cases is that a corporation is liable *civiliter* for all torts committed by its servants or agents the same as a natural person; and that it is liable as a natural person for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under the corporation's seal nor a vote of the corporation constituting the agency or authorizing the acts. State v. Morris & Essex Railroad Co., 23 N. J. L. 360, text 369; Denver & Rio Grande Ry. Co. v. Harris, 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146. See also Salt Lake City v. Hollister, 118 U. S. 256, 6 Sup. Ct. Rep. 1055, 30 L. Ed. 176; New Jersey Steamboat Co. v. Brockett, 121

U. S. 637, 7 Sup. Ct. Rep. 1039, 30 L. Ed. 1049. And so a corporation is liable like an individual to make compensation for any tort committed by its agents or employees in the course of their employment, even though the act be done wantonly and recklessly or against the express orders of the corporation principal. See: Stenson v. Prevatt, 84 Fla. 416, 94 Sou. Rep. 656.

The recovery of punitive damages against a corporation for a wanton tort of its servant is argued by plaintiff in error not to be allowable unless it is alleged and proved as a basis for such recovery that the corporation employed or retained in its service an incompetent servant with knowledge of his incompetency, or that it is chargeable with some gross misconduct in connection with the servant's alleged wanton act, or that the corporation authorized or ratified the act complained of by participation through its controlling officers in the commission of the servant's wrongful act done on the corporation's behalf. Authorities cited to support this contention on the part of plaintiff in error are: Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. Rep. 261, 37 L. Ed. 97; Denver & R. G. Railway v. Harris, 122 U. S. 597, 7 Sup. Ct. Rep. 1286, 30 L. Ed. 1146; Cleghorn v. New York Central & H. R. R. Co., 56 N. Y. 44.

However, a study of all these cases, each of which involved an action against a railroad company, discloses that what was really held by the Courts deciding them is, that in cases brought for recovery of punitive damages against a corporation for the alleged wanton tort of an agent or servant *charged with a single specific duty* in cases where the agent or servant, without authority, committed a wrong that he was not expressly or impliedly directed to do on the corporation's behalf, and without any fault or negligence

on the part of the controlling officers of the corporation in ratifying or approving it, the punitive or exemplary damages are not recoverable merely because the agent or servant's act was of such gross nature as to render the servant subject to such liability. See: Pullman Palace Car Co. v. Lawrence, 74 Miss. 782, 22 Sou. Rep. 53, where such distinction is observed by the Mississippi Court.

But the general rule, and the weight of authority is, that in ordinary cases the allowance of exemplary damages applies equally in a suit against a corporation as in a suit against a natural person. Jeffersonville R. R. Co. v. Rogers, 28 Ind. 1, 92 Am. Dec. 276; 2 Sutherland on Damages (Fourth Ed.) page 1341, et seq. No better reasoning for such rule can be found than that stated in Jeffersonville R. R. Co. v. Rogers, supra, where the Supreme Court of Indiana observed (pages 280-281):

"Could the jury properly give exemplary damages in a case like this? It is argued that a corporation cannot be supposed to act willfully or maliciously, and that therefore the damages cannot go beyond the point of actual compensation. This reasoning is too metaphysical to be applied in testing the civil liability of a corporation. Practically, there is a human intelligence and volition which controls the affairs of a corporation, just like those of an individual, and which may act willfully, maliciously, or recklessly, thus laying the basis for exemplary damages; and therefore whatever rule of damages would apply in a suit against a natural person ought to apply in a suit against a corporation. Any discrimination in that regard would shock the public sense of impartial justice, and would be an unjustifiable innovation. The instructions governing subordinate employees and agents may be devised in such utter disregard of the rights of others, that obedience to them will result in pal-

pable oppression and gross wrong to individuals. Whether it was so here was a question for the jury."

Again in the case of Goddard v. Grand Trunk Ry., 57 Me. 202, 223, 2 Am. Rep. 39, quoted from in Sutherland on Damages, *supra,* at pages 1341-1342, a stronger statement of reasons for the rule is to be found as follows from the Supreme Court of Maine:

"A corporation is an imaginary being. It has no mind but the mind of its servants; it has no voice but the voice of its servants; it has no hands with which to act but the hands of its servants. All its schemes of mischief, as well as schemes of public enterprise, are conceived by human minds and executed by human hands; and these minds and hands are servants' minds and hands. All attempts, therefore, to distinguish between the guilt of the servant and the guilt of the corporation, or the malice of the servant and the malice of the corporation or the punishment of the servant and the punishment of the corporation, is sheer nonsense, and only tends to confuse the mind and confound the judgment. Neither guilt, malice nor suffering is predicable of this ideal existence called a corporation. And yet, under cover of its name and authority, there is, in fact, as much wickedness, and as much that is deserving of punishment as can be found anywhere else. And since these ideal existences can neither be hung, imprisoned, whipped or put in the stocks—since, in fact, no corrective influence can be brought to bear upon them except that of pecuniary loss—it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them than in its application to natural persons. If those who are in the habit of thinking that it is a terrible hardship to punish an innocent corporation for the wickedness of its agents and servants will, for a moment, reflect upon the absurdity of their own thoughts this anxiety

will be cured. Careful engineers can be selected who will not run their trains into open draws; careful baggagemen can be secured who will not handle and smash trunks and band-boxes, as is now the universal custom; and conductors and brakemen can be had who will not assault and injure passengers; and if the courts will only let the verdicts of upright and intelligent juries alone, and the doctrine of exemplary damages have its legitimate influence these great and growing evils will be very much lessened, if not entirely cured. There is but one vulnerable point about these ideal existences called corporations, and that is the pocket of the moneyed powers that is concealed behind them; and, if that is reached, they will wince. When it is thoroughly understood that it is not profitable to employ careless and indifferent agents, or reckless and insolvent servants better men will take their places, and not before."

And indeed in our own State of Florida in the recent case of Duval Engineering & Contracting Company v. Golf, not officially reported, the Circuit Court of Duval County affirmed a judgment of the Civil Court of Record allowing punitive damages against a corporation in an assault and battery case and this Court approved it by denying certiorari.

So impressed as we are by the soundness of the reasoning given by the two Courts from whose decisions we have quoted, and by others whose opinions will be found cited in Sutherland on Damages to the same effect (although there is authority the other way), we hold that as a general rule in this jurisdiction the liability of a corporate master for punitive or exemplary damages for wanton or malicious torts committed by an agent or servant, is no different from the liability of an individual master under the same circumstances.

For every actionable injury there is an absolute right to damages; the law recognizes such an injury whenever a legal right is violated. Rights are legal when recognized and protected by law, so every invasion of a legal right threatens the right itself, and to some extent impairs the possessor's enjoyment of it. The logical sequence of finding an invasion is the legal sequence, a legal injury that entitles the injured party to compensation proportioned in amount to the injury.

In actions of tort full compensation may be recovered though the injury was the result of mistake or the acts were done in good faith. The right to compensation for tortious injuries does not depend at all upon their being inflicted purposely or with any culpable intention.

But there is a marked difference between the consequences of a tort committed with and without malice; between a wrong done in the assertion of a supposed right and one wantonly committed; between a wrong attended with incidents of insult and one unattended by such concomitants. Vicious accompaniments increase the injury and render additional damages necessary or appropriate *to adequate compensation.* 2 Sutherland on Damages (4th Ed.) par. 390, *et seq.* Thus in Smith v. Bagwell, 19 Fla. 117, text p. 122, 45 Am. Rep. 12, it is held that in an action for assault and battery vindictive damages can be recovered for an assault and battery committed with circumstances of aggravation, but in such circumstances that such damages are allowed *by way of compensation* (and not punitively) for the private injury complained of in such an action, because the circumstances of aggravation attending the injury have increased the injury by reason thereof.

But damages known as exemplary or punitive damages (smart money) are altogether of a different character than

vindictive damages when allowed by way of increased compensation for increased injury occasioned by circumstances of aggravation attending the commission of a tort. Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Exemplary or punitive damages are therefore damages *ultra*·compensation, and are authorized to be ·inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the State, or consists of aggravated· misconduct or a lawless act resulting in injury to plaintiff when sought to be redressed by a civil action for the tort.

Exemplary or punitive (sometimes called vindictive) damages are assessable dependent on the circumstances showing moral turpitude or atrocity in the defendant's conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as "smart money" against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs. They are peculiarly left to the discretion of the jury as the degree of punishment to be inflicted must always be dependent on the circumstances of each case, as well as upon the demonstrated degree of malice, wantonness, oppression or outrage found by the jury from the evidence. Day v. Woodworth, 13 How. 363, text p. 371, 14 L. Ed. 181, text p. 185; Louisville & N. R. Co. v. Bizzell, 131 Ala. 429, 30 Sou. Rep. 777; Coleman v. Pepper, 159 Ala. 310, 49 Sou. Rep. 310. In Vanvaks v. Chantly, 107 Fla. 647, 145 Sou. Rep. 838, this Court sustained a $25,000.00 judgment for exemplary or

punitive damages rendered in favor of a husband suing defendant for the latter's alienation of his wife's affections, where the pleadings and evidence showed aggravated circumstances consisting of numerous acts of debauchery of the wife by her wealthy paramour in the husband's own home during the enforced absence of the husband, a working man, whose wife was finally lured into deserting him.

In order to recover exemplary or punitive damages the declaration msut allege some general facts and circumstances of fraud, malice, gross negligence or oppression tending to show plaintiff's right to recover such damages in addition to damages by way of compensation. But punitive or exemplary damages need not be described or demanded in the declaration by that name, in order to be recoverable. Bowles v. Lowery, 5 Ala. App. 555, 59 Sou. Rep. 696; Central of Georgia R. Co. v. Augusta Brokerage Co., 122 Ga. 646, 50 S. E. Rep. 473, 69 L. R. A. 119; Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. Rep. 265, 41 L. Ed. 632; Lauria v. E. I. DuPont de Nemours, 241 Fed. 687; Korber v. Dime Savings Bank of Brooklyn, 134 App. Div. 149, 118 N. Y. S. 857; Johnson v. Collier, 161 Ala. 204, 49 Sou. Rep. 761; Davis v. Seeley, 91 Iowa 583, 60 N. W. Rep. 183, 151 A. S. R. 356; Macon Ry. & Light Co. v. Mason, 123 Ga. 773, 51 S. E. Rep. 569.

It is extremely doubtful that the declaration, or either count of it, in this case measures up to the foregoing rule as a sufficient pleading of plaintiff's claim for punitive or exemplary damages in the alleged circumstances. But assuming *arguendo*, for the purposes of this writ of error, that it does, we pass now to a consideration of whether the facts in evidence warranted the court in submitting to the jury the question of allowing such damages.

The province of the Court in all cases of claims for puni-

tive or exemplary damages is to decide at the close of the evidence, as matter of law, the preliminary question whether or not there is any legal basis for recovery of such damages shown by any interpretation of the evidence favorable to the plaintiff and relied upon by him to support his claim therefor. It is likewise to review after verdict the reasonableness of the amount of award of such damages under the evidence, in cases where same have been submitted to the jury to assess, and are included in the verdict. Florida Cent. & P. R. Co. v. Mooney, 45 Fla. 286, 38 So. Rep. 1010, 110 Am. St. Rep. 73, 20 Am. Neg. Rep. 686.

In the present case, there is ample proof of circumstances of aggravation attending the tort sued for, to sustain an enhanced allowance of compensating damages within the rule of Smith v. Bagwell, 19 Fla. 117 (*supra*) to include compensation (and incidentally vindication) for the intangible elements of plaintiff's injury such as wounded feelings, public degradation, personal indignity and the like accompanying the defendant's alleged assault, battery and false imprisonment, regardless of any good faith of defendant's servants in believing themselves warranted in taking the course of action that they did.

But a tort committed by mistake in the *bona fide* assertion of a supposed right, but absent any element of malicious motive or wrong intention, or circumstances of recklessness or gross negligence in conduct amounting to the same thing, will not warrant the giving of exemplary or punitive damages *extra* compensation for the elements of aggravation that are authorized to be included in the compensatory award under the rule of Smith v. Bagwell, *supra*. See: Philadelphia, B. & W. R. Co. v. Green, 110 Md. 32, 71 Atl. Rep. 986; Southern Ry. Co. v. Coleman, 153 Ala. 265, 44 Sou. Rep. 837; Western Union Tel. Co. v. Westmore-

land, 151 Ala. 319, 44 Sou. Rep. 382; Jopling v. Bluefield Water Works & Imp. Co., 70 W. Va. 670, 74 S. E. 943, 39 L. R. A. (N. S.) 814.

The foregoing conclusion is so because elements of damage such as for indignity suffered, humiliation experienced, and the like, are allowed *as compensation* for the injury and as the money value equivalent to plaintiff of the legal right of peaceful security plaintiff has been deprived of by defendant's tortious wrong. Compensation for such elements of damage is recoverable irrespective of whether the defendant's tort was committed intentionally or by mistake, with good motive or with bad motive, advisedly or on impulse. Punitive or exemplary damages are allowable, however, solely as punishment or "smart money" to be inflicted for the malicious or wanton state of mind with which the defendant violated plaintiff's legal right, and can only be imposed in cases where either by direct or circumstantial evidence some reasonable basis for an inference of wantonness, actual malice, deliberation, gross negligence, or utter disregard of law on defendant's part, may be legitimately drawn by the jury trying the case.

Turning now to the case at bar, it is evident upon the statement of the facts heretofore given that there is present in the case no such evidence of evil intent, actual or presumptive, as is necessary to sustain a recovery of punitive or exemplary damages for the particular wrong shown. On the contrary, it appears from the evidence that while the defendant has become liable to plaintiff to make compensation to her for humiliation, indignity and mental suffering occasioned by the defendant's wrongful interference with her peaceful security of person and reputation, the wrong done was the result of an honest, but mistaken, suspicion on the part of defendant's servants that plaintiff was

guilty of theft from defendant's store. Had the defendant's servants stripped plaintiff of her clothing in an effort to find articles supposed to have been stolen, or beat her in an effort to make her confess her alleged guilt, or perpetrated some other similar atrocious and excessive act of violence toward plaintiff, the situation would have been different and a finding of malicious and wanton wrong doing might have been sustained, whether done under a mistaken view of right or not on defendant's part. But in this case the force and detention employed was no greater than would have been the case had the plaintiff's guilt of theft been established. So the wrong done was such as would be occasioned in any event solely as a result of the assault, battery and false imprisonment shown to have occurred. It is not shown to have been deliberately done on account of any actual intent on the part of defendant's servants to unduly or inordinately add to plaintiff's suffering and indignity as a means of coercing her future conduct or as an instrument of revenge for past conduct.

It was therefore the duty of the court to have withdrawn from the jury at defendant's request its instruction that authorized the jury to inflict punitive or exemplary damages in addition to compensatory damages, and its refusal to do so was unauthorized. See: St. Petersburg & Gulf Ry. Co. v. Smith, 71 Fla. 64, 70 Sou. Rep. 940. It was accordingly reversible error to charge upon the subject of exemplary damages on the case made. Wilson v. Leonard, 71 Fla. 66, 70 Sou. Rep. 841; St. Johns Electric Co. v. Lawler, 90 Fla. 188, 105 Sou. Rep. 818. And it cannot be said that such error was altogether harmless merely because the jury might have legitimately found the same $1,250.00 verdict as pure compensation for the plaintiff's injuries after taking into consideration the compensation allowable

for the aggravating circumstances of injury alleged to have accompanied the commission of defendant's tortious acts in a public place.

The judgment is affirmed in all respects except as to the award of damages. On the question of damages only, a new trial is awarded to the defendant on authority of Section 4640 C. G. L., 2921 R. G. S., with instructions to the trial judge to withdraw from the jury's consideration at such new trial its charges allowing the jury to impose punitive or exemplary damages under the circumstances shown by the record as herein considered. The costs of this appeal shall be taxed in the final judgment to follow such new trial in the court below.

Affirmed on merits with costs.

Reversed with directions for new trial on question of damages.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.

BROWN, J. (concurring).—While concurring generally in the well considered opinion of Mr. Justice DAVIS, there is one expression which indicates that vindictive damages do not fall within the same class with exemplary or punitive damages. I think our case of Smith v. Bagwell, properly construed, means that exemplary, punitive and vindictive damages are all one class of damages. See also R. C. L. 579, 17 C. J. 968. Broadly speaking, in cases of this kind, there are only two classes of recoverable damages, compensatory and exemplary. Compensatory damages are frequently referred to as "actual" damages, 8 R. C. L. 427, and mental suffering caused by the wrongful act of the defendant is one of the elements of compensatory damages. Smith v. Bagwell, supra; 8 R. C. L. 521.