389 So.2d 303 (1980)
LIFE INSURANCE COMPANY OF NORTH America, Appellant,
v.
Margaret E. Del AGUILA, Robert B. Knoll, Walter W. Morris, Jr., and Knoll Associates, Inc., Etc., Appellees.
No. 79-1328/T4-601.
District Court of Appeal of Florida, Fifth District.
October 16, 1980.
Marjorie D. Gadarian, of Jones & Foster, P.A., West Palm Beach, for appellant.
Robert T. Burger, Satellite Beach, and J. Daniel Ennis, of Ennis & Northcutt, Indian Harbour Beach, for appellees.
*304 ORFINGER, Judge.
Appellant, Life Insurance Company of North America (LINA), together with Robert B. Knoll, Walter W. Morris, Jr., and Knoll Associates, Inc., were defendants below in an action brought by Appellee and submitted to the jury on one count in fraud. The jury awarded appellee $34,000 in compensatory damages against all defendants and awarded punitive damages as follows: $65,000 against LINA, $15,000 against Robert B. Knoll, $2,000 against Walter W. Morris, Jr., and $34,000 against Knoll Associates, Inc. LINA appeals the final judgment entered upon the verdict.
Knoll Associates, Inc., and Robert B. Knoll were general agents for LINA, authorized to sell variable annuity contracts for it. Morris was an agent for Knoll Associates and was also so authorized. Knoll Associates had sold appellee's husband a $50,000 life insurance policy, and when he died, appellee notified the office of his death. The next day Morris appeared at appellee's home and inquired of her about her plans for investing the proceeds of the policy. Morris represented himself as an agent of LINA, told appellee of his many years of experience in the sale of insurance and annuities and advised her that he was sales manager of Knoll Associates, in charge of life insurance and annuity sales. He also had descriptive folders and pamphlets published by LINA which described various investment possibilities.
After advising appellee that she could not pay LINA directly but that an agent must remit the funds, she deposited the entire $50,000 with Knoll Associates, to be invested in various LINA programs. $15,000 was immediately invested through LINA in a mutual fund. After Knoll and Morris again told appellee that she could not pay LINA directly since the funds must come through an authorized agent, she agreed to purchase a variable annuity with the remaining $35,000, but to allow Knoll Associates to hold that sum in an interest bearing escrow account and pay for the policy in monthly installments of $500 each. She testified that she would not have given them the money had she not believed them to be agents for LINA. LINA initially billed appellee for the monthly installments, but sent no more bills to appellee after receipt of a letter from Knoll Associates advising that bills to appellee should be discontinued because "... she has paid Knoll Associates the full amount and Knoll Associates will make the monthly contribution."
Knoll Associates paid two monthly installments and converted the remaining $34,000 to their own use. This litigation followed. The jury returned a special verdict in which it found, in answer to specifically framed interrogatories:
1. That Robert B. Knoll made fraudulent representations that were a legal cause of plaintiff's damages.
2. That Walter W. Morris, Jr., made fraudulent representations that were a legal cause of plaintiff's damages.
3. That Robert B. Knoll and Walter W. Morris, Jr. were acting within their real or apparent authority of defendant Knoll Associates, Inc., when they obtained monies from plaintiff.
4. That Robert B. Knoll, Walter W. Morris, Jr., and Knoll Associates, Inc., were acting within their real or apparent authority of LINA when monies were obtained from plaintiff.
Appellant's first point questions the propriety of the instruction given the jury on the subject of agency. Appellant correctly points to a portion of the instruction which was not a complete sentence and which, standing alone, might be confusing. But the correctness of jury instructions is determined not by any one instruction or part thereof, but by the instructions as a whole, and reading the entire agency instructions we cannot say that they were erroneous or misleading. Grimm v. Prudence Mutual Casualty Company, 243 So.2d 140 (Fla. 1971).
Much more vexatious, however, is the other point raised by appellant, as follows:
WHETHER THE COURT ERRED IN SUBMITTING THE ISSUE OF PUNITIVE DAMAGES AGAINST LIFE INSURANCE *305 COMPANY OF NORTH AMERICA TO THE JURY AND IN ENTERING FINAL JUDGMENT FOR PUNITIVE DAMAGES AGAINST LIFE INSURANCE COMPANY OF NORTH AMERICA BASED ON LIABILITY FOR AN AGENT'S CRIMINAL CONDUCT WHERE THERE WAS NO PROOF LIFE INSURANCE COMPANY OF NORTH AMERICA HAD ACTUAL OR CONSTRUCTIVE KNOWLEDGE THAT ITS AGENT WOULD ENGAGE IN CONDUCT LIKELY TO CAUSE INJURY TO OTHERS.
We are squarely presented with the question of whether a principal can be vicariously liable in punitive damages under respondeat superior for torts of an agent or employee, when the principal neither authorized nor ratified the tort in the absence of any proof of negligent hiring or of some other negligent act directly attributable to the employer.
There is a sharp split of authorities on the question.[1] Professor Prosser succinctly states the competing views:
Perhaps the chief among the various controversies which have surrounded punitive damages has been over whether they may be awarded against an employer vicariously liable for the tort of his servant, where he has neither authorized nor ratified it. Following a leading federal case, a considerable minority of the courts have held that they can not, laying stress upon the injustice of a punishment inflicted upon one who has been entirely innocent throughout. This is of course particularly true where the employer is a corporation, and the pocket which is hit is that of the blameless stockholders, whom no one wants to punish. The Restatement of Torts has taken this position.
The majority of the courts, however, have held that the vicarious liability of the master for acts within the scope of the employment extends to punitive as well as compensatory damages, even in the absence of approval or ratification, and that this is true especially in the case of corporations, who can only act through their agents. They have been concerned primarily with the deterrent effect of the award of exemplary damages, and have said often enough that if such damages will encourage employers to exercise closer control over their servants for the prevention of outrageous torts, that is sufficient ground for awarding them.
Prosser, The Law of Torts, (1971), p. 12.
We believe that the Florida Supreme Court has elected to follow the line of authority which Prosser refers to as the "majority view", i.e., that the vicarious liability of the master for acts within the scope of employment extends to punitive as well as compensatory damages, even in the absence of ratification or approval.
In Winn and Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936), the Florida Supreme Court explored the question for the first time. The plaintiff in that case had been a customer in defendant's store. It was alleged that as she left the store she was accosted by defendant's employer, falsely accused of stealing some merchandise, pushed and shoved back into the store, subjected to abusive language and placed in a small dark room while awaiting the police. She claimed compensatory and punitive damages against the defendant. The jury awarded plaintiff both compensatory and punitive damages and the appeal followed. Defendant (appellant) contended that punitive damages could not be recovered "because defendant is a corporation and nothing has been alleged in the declaration to show corporate authorization or ratification of the wrong done by the corporation's servant." The Supreme Court disposed of this argument by holding that the modern trend of authority held corporate masters liable to the same extent as an individual master,
And so a corporation is liable like an individual to make compensation for any tort committed by its agents or employees in the course of their employment, even though the act be done wantonly *306 and recklessly or against the express orders of the corporation principal. See Stenson v. Prevatt, 84 Fla. 416, 94 So. 656.
171 So. at 219.
Appellants in Winn & Lovett next argued that punitive damages against a corporation for wanton torts of its servant could not be recovered unless it was alleged and proved as a basis for such recovery that the corporation employed or retained an incompetent servant with knowledge of his incompetency, or that it is chargeable with some gross misconduct in connection with the servant's act or that the corporation authorized or ratified the act. Examining the authorities cited to support that portion, the court found that those cases really held:
that in cases brought for recovery of punitive damages against a corporation for the alleged wanton tort of an agent or servant charged with a single specific duty in cases where the agent or servant, without authority, committed a wrong that he was not expressly or impliedly directed to do on the corporation's behalf, and without any fault or negligence on the part of the controlling officers of the corporation in ratifying or approving it, the punitive or exemplary damages are not recoverable merely because the agent or servant's act was of such gross nature as to render the servant subject to such liability. (Emphasis supplied).
171 So. at 220.
The punitive damage award was affirmed.
So far as we can determine, Winn & Lovett is still the law of Florida. Not only has the Supreme Court reaffirmed it,[2] but District Courts of Appeal have followed it as well, either explicitly or in principle.[3] In Alexander v. Alterman Transport Lines, Inc., 350 So.2d 1128 (Fla. 1st DCA 1977), the First District would not permit an award of punitive damages against the employer under the doctrine of respondeat superior, holding that some act of the employer, such as negligent hiring or knowledge of the employee's propensities was necessary before such award could be sustained. But this opinion appears to be in conflict with Winn & Lovett v. Archer, supra, and we cannot support it.[4]
This was a proper case for submission to the jury which found that Knoll and Morris were acting within the real or apparent authority of LINA when they defrauded the plaintiff. The jury could thus assess punitive damages against LINA under the doctrine of respondeat superior.
Finding no reversible error, the judgment appealed from is
AFFIRMED.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] 22 Am.Jur.2d, Damages, § 261 (1978).
[2] Buie v. Barnett First National Bank of Jacksonville, 266 So.2d 657 (Fla. 1972); Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). Other Supreme Court cases have reached the same conclusion, without discussing the principle. E.g. Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133 (1938).
[3] Columbia By The Sea, Inc. v. Petty, 157 So.2d 190 (Fla. 2d DCA 1963); Mercury Motor Express, Inc. v. Smith, 372 So.2d 116 (Fla. 3d DCA 1979).
[4] See concurring and dissenting opinion of Judge Ervin in Ellis v. Golconda Corp., 352 So.2d 1221, 1229 (Fla. 1st DCA 1977) cert. den. Peterson v. McKenzie Tank Lines, Inc., 365 So.2d 714 (Fla. 1978), wherein he says that Alterman appears to be in conflict with Winn & Lovett v. Archer, supra, as well as the weight of authority, and Judge Ervin's concurring opinion in Alexander v. Alterman Transport Lines, Inc., 387 So.2d 422 (Fla. 1st DCA 1980). See also, 188 AFTL Journal 8, May 1978 where the editor refers to Alterman as a "wildcat" case which "flies directly in the face of all of the many other Florida cases as well as most of the decisions throughout the country."