NED BAILEY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

## Opinion Filed August 10, 1918.

1. An assault is an intentional attempt by violence to do an injury to the person of another. There must be an attempt to carry the intention into immediate execution, else it falls short of an actual assault.

2. Under an indictment for assault with intent to commit manslaughter where the evidence shows that the defendant came up to one Thompson and drew an axe on him, and told him if he "cheaped" he would split him open with the axe, and that the defendant was over him with the axe drawn but did not strike him and did not strike at him even, and that the said defendant and Thompson were alone in the woods, and he was not prevented from striking by anyone, and was in easy reach of Thompson and could easily have assaulted him if he had so desired, there was no assault and there could be no conviction of assault with intent to commit manslaughter or any other crime.

Writ of Error to Criminal Court of Record for Duval County; J. M. Peeler, Judge.

Judgment reversed.

*A. R. Logan,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

BROWNE, C. J.—On writ of error to a conviction of assault with intent to commit manslaughter it is contended that the evidence does not support the verdict.

The bill of exceptions states that the prosecuting witness testified that "the defendtnt, Ned Bailey, came upon him and drew an ax on him and told him that if he 'Cheaped,' meaning Thompson, he would split him open with the ax, and that the defendant was over him with the ax drawn, but did not strike him, and did not strike at him even, and the said Ed Bailey and the said J. I. Thompson were alone in the woods, and that he was not prevented from striking, and was in easy reach of the said J. I. Thompson and could easily have assaulted him if he had so desired.

"CROSS-EXAMINATION:

"I had this defendant working for me the week previous to this and he stated that I did not settle with him as I should have done, he drew this ax on me and was over me three or four feet from where I was sitting on a log, he came upon me from the rear, and I did not know he was near me until he said I will split you open with this ax if you 'cheap,' and I begged him not to assault me, and he was not prevented from assaulting me, he could have done so; and we went to the public road, where his father was in waiting in a wagon, and I stated

that I had paid him all the money that was coming to him, and he did not say anything about not having his money the Saturday night previous, and when he left I called on the Justice of the Peace and took a warrant for his arrest.

### "RE-DIRECT:

"Ed Bailey's father made him get in the wagon and stop fussing and drove away. I was not drunk at the time; I have never had any trouble with this man before; he did not strike me and did not strike at me even, although he could have done so if he desired, no one present to prevent it; it was my ax, I was cutting logs and set down to rest and he came upon and took the ax and drew it on me."

Also that "Ed Bailey, the defendant, being called in his own behalf and after being duly sworn says, that I am the defendant herein, the trouble happened in this way: I had been working for Mr. Thompson, and he did not pay me all the money that was coming to me, and I went down in the woods where he was at work on this Monday morning, and he was cutting logs, and when I walked up to where he was, he said, 'Ed, take this ax and cut the limb off.' I took the tax and cut the limb, and I said I could not cut any more for you, you did not pay me all the money that was coming to me Saturday night, and he said I will cut your gutts out if you fool with me; I had the tax and backed off, and I told him not to come upon me; I could have cut him with the ax if I had desired; I only wanted to defend myself, and I told him to come over to the road where my father was in waiting, and when we reached the road I still held the ax. I did not want to cut him, and my father said come on, Ed, that man will cut you, and I left and got in the wagon

with my father. I did not have anything in my hands to assault Mr. Thompson in the woods when I went down there. I did get the ax when he said he was going to cut my gutts out. I was going to defend myself; we were alone, no one present at all. I did not strike at him and did not offer to strike him."

In the case of Davis v. State, 25 Fla. 272, 5 South. Rep. 803, this court said: "To make out the charge it was necessary not only to show the assault but the intent also, as charged in the indictment, the intent being the very gist of the offense. The evidence shows most clearly that the defendant could have shot Farnell if he so desired, but as he did not shoot, this is the best evidence that he did not intend to do so. * * * A man's intentions are arrived at from his conduct, his actions, and applying this rule to the defendant and judging him by his actions when he had an opportunity to shoot Farnell and did not do so, the conclusion is that he did not intend to murder him."

The facts in that case are thus stated in the opinion: "At this time the defendant was seen running from his own house towards where the crowd was with a double-barreled shotgun in his hands, and when near the crowd —some witnesses say in ten or fifteen yards, and others say in fifty yards—the defendant hallowed to the crowd and told them to get out of the way, that he intended to kill Farnell. The crowd scattered and the defendant presented his gun at Farnell, swearing that he would shoot him, but that defendant did not shoot, and that no one prevented his shooting. That defendant was near enough to have shot Farnell, and that there was nothing between the parties which prevented the shooting."

This was a much stronger case for the State than the one at bar. There the defendant expressed his intention

to kill Farnell, but this court held that as he had an opportunity to shoot him and did not do so, it was conclusive that he did not intend to.

An assault is an intentional attempt by violence to do an injury to the person of another. There must be an attempt to carry the intention into immediate execution, else it falls short of an actual assault.

The evidence shows clearly that there was no assault and therefore there can be no conviction of an assault with the intent to commit manslaughter or any other crime.

Judgment reversed.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.