### JOHNSON v. A & A SUPER MARKETS, Inc.
### No. 26991.

Circuit Court, Duval County.

April 21, 1959.

O. O. McCollum, Hazard & Thames, Jacksonville, for plaintiff.

W. A. Cleveland, Cleveland & Goodfriend, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

The complaint herein, as finally amended and upheld by the order of this court filed February 4, 1959, alleges that while plaintiff was selecting groceries in defendant's store—"the defendant, acting through one of the clerks, wrongfully and unlawfully advanced upon the plaintiff in a loud threatening manner and then there assaulted and imprisoned falsely the plaintiff in this, to-wit: by accusing plaintiff of having stolen various items of merchandise, demanding that plaintiff open her purse and disgorge the stolen property, unlawfully detaining the plaintiff against her will, requiring and forcing the plaintiff to open her purse and exhibit its contents, in the presence of other customers of the defendant's store", as a result of which plaintiff suffered damages which she seeks to recover. To the complaint defendant has interposed three defenses, the substance of which can be termed "general denials".

Plaintiff's deposition was taken and on the basis thereof the defendant moved for a summary judgment and supported its motion by the affidavits of John A. Amos, president of defendant corporation, and Edgar Earl Walker, the employee whose actions offended plaintiff. In opposition to the motion, plaintiff filed her own affidavit which is not inconsistent with her deposition in any material respect, and while it does raise factual issues on some aspects of the occurence, it does not raise a genuine issue as to any material facts.

This court has construed the allegations of the complaint to state a cause of action for assault or false imprisonment or both and as to each or both finds that there is no genuine issue as to any material facts and that for the purpose of this motion the following material facts must be deemed established—

1. That after entering the defendant's store with her three-year old daughter about 5:15 P.M., on the day in question, plaintiff selected a few items and placed them in her grocery carriage; that after inspecting but not selecting a box of Dreft (soap power), she

went to the meat counter and got a pound of ground beef and put it in her carriage; that as she crossed the store she was approached by Mr. Walker and, in plaintiff's words, the following took place—

"A. Walker, I think is what he said his name was. He came up to me and said, 'I want what you have in your purse', and I said, 'What?' He said, 'You heard me. I want what you have in your purse', and he was standing between me and the front door and the front of the carriage and I have never been so shocked in my life. I opened my purse and said, 'Well, if there's anything in there that belongs to you, you can have it.' All I had in my purse was two Kleenex, a fountain pen that my baby had been playing with, and my wallet and a birthday card to my nephew, and Mr. Walker kept standing there. He said, 'You heard me.' That's when I said, 'You heard what?' He said, 'I saw you when you took it out.' I said, 'You saw me take what out?' and he had this 27-cent piece of bologna and a bag of . . . it was either Scotch tape or ribbon in his hand, and I said, 'What do you mean, you saw me take it out?' He said, 'Just exactly what I said. I saw you,' and I told him, I said, 'If I had got it in there, I wouldn't have taken it out.' * * *

"A. He came from all across the store and he came up to me, followed me all the way across the store over there where I was at, and where he got the bologna I do not know, and whenever I said that he turned around and looked at me and started to walk off, and there was an elderly man walked up to me and he tapped me on the shoulder, and this elderly man said, 'I seen everything', and he says, 'little lady', he said, 'if I were you I'd go call the police', and he had his carriage full of groceries, but he left it sitting right there and walked out of the door; and as I went around the counter back where I was going up to the phone booth to call the police, I met Mr. Amos and I said, 'Mr. Amos, could you tell me what this is all about?' and he looked at me and he threw up his hands. He said, 'I don't know. I didn't see anything and I didn't hear anything and I don't know what it's all about', and he had a little boy looked to be about five or six years old by the hand, and Mr. Amos went into the office to sit down. * * * And I went into the phone booth and called the police. The police came. I went back into Mr. Amos' office and I asked Mr. Amos would he either please explain to me what this is all about, because I had never been so shocked and so upset in my life and I was humiliated by it all, and he told me . . . he said, 'Mrs. Johnson, I don't know anything. I didn't see anything', and he dropped his head down on the desk and I walked out of the front of the store and waited until the police came. When the police came he asked me what the trouble was and I told him."

2. That when Mr. Walker addressed the plaintiff he stood in front of her and her carriage, blocking her forward movement, but he did not touch her or the carriage; when she finished showing the contents of her purse he continued to stand in the same place but said nothing; she then took her child out of the carriage, left her carriage and went to Mr. Amos and complained about Mr. Walker's actions, and walked freely out of the store; no one attempted to restrain plaintiff at all at any time and she was not given any directions as to what to do or not to do; she called the police from a phone booth outside the store and waited voluntarily for them to arrive; while waiting, she re-entered the store to talk to Mr. Amos voluntarily; when the police arrived, she made her complaint outside the store, and Mr. Walker, on seeing the police, went out and told his version of the occurrence.

Indulging all inferences in favor of the plaintiff, there is a total absence of proof that plaintiff suffered an "assault" in the episode described. As defined in Winn & Lovett Grocery Co. v. Archer (Fla.), 171 So. 214, at page 217—

"An assault is any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. 5 C. J. 615".

See also: Bailey v. The State of Florida (Fla.), 79 So. 639, 76 Fla. 230; Motley v. State (Fla.), 20 So. 2d 798; and 2 Am. Jur. Pleading and Practice Forms, page 369.

Clearly, the essential elements of (1) an unlawful offer or attempt to inflict corporeal injury to plaintiff, coupled with (2) a well founded fear of imminent peril, with or without the present ability to do so if not prevented, are missing here.

There is also a total absence of any evidence of an unlawful detention or false imprisonment. Even the action of Mr. Walker in stationing himself in front of plaintiff and her carriage as he made the statements, which the court must assume he made for the purpose of this motion, and in fact blocking plaintiff's path, does not show an unlawful restraint because plaintiff was not prevented from moving freely from that place as she desired. The depositions and affidavits on file do not show that plaintiff at any time did anything against her will, not even the display of the contents of her purse, which by her own testimony were disgorged spontaneously and in apparent indigation aroused by Mr. Walker's remark.

The classic definition of false imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty. See Johnson v. Weiner, 155 Fla. 169, 19 So. 2d 699. See also 22 Am. Jur., False Imprisonment, pages 359, 361, 362, section 13.

For a similar factual situation to the case at bar, and one where a minor boy, who had been forced to turn his pockets out by the store manager, was denied recovery, see John D. Sweeney v. F. W. Woolworth Co., 31 A.L.R. 311 (Mass.).

It is accordingly ordered and adjudged that defendant's motion for summary judgment is granted, and defendant shall go hence without day and recover of and from the plaintiff its costs, to be taxed pursuant to motion therefor and three days' notice of a hearing thereon.