388 So.2d 1271 (1980)
Frederick Marsh BLANTON, Appellant,
v.
STATE of Florida, Appellee.
No. 78-2518.
District Court of Appeal of Florida, Fourth District.
September 24, 1980.
Rehearing Denied November 12, 1980.
*1272 Geoffrey C. Fleck of Kogen & Kogan, P.A., Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
This is an appeal from a final judgment finding Frederick Blanton guilty of aggravated assault with a shotgun and imposing a minimum mandatory sentence of three years' imprisonment followed by two years' probation. On appeal Blanton challenges the sufficiency of the evidence and the legality of his sentence.
At approximately 2:00 p.m. on February 24, 1978, Detective Scotti and Officer Leahey of the Fort Lauderdale Police Department, pursuant to a police investigation, proceeded to the home of Dr. Frederick Blanton. The officers pulled onto the Blanton property just as Dr. and Mrs. Blanton were alighting from their car. The policemen were driving a pickup truck and were dressed in casual clothes. Detective Scotti had met Dr. Blanton and his wife twice before in the preceding year and each time Scotti was dressed similarly. On one occasion Detective Scotti had also been to the Blanton home and had seen Dr. Blanton in possession of a shotgun.
The officers testified that Officer Leahey took out his badge and identified himself and Detective Scotti as policemen. Mrs. Blanton got out of the car and addressed Detective Scotti by name. Dr. Blanton walked directly from his car into his home, turning at one point to look at the officers, but otherwise did not acknowledge their presence. Within seconds, Dr. Blanton appeared at the front door, carrying a shotgun, dropped to one knee, pointed the shotgun at Detective Scotti, who was 30 feet away, and said, "I've got five shots in this gun, and if you don't get off my property, I'll blow your heads off!" Detective Scotti testified that he was in fear of his life. The two officers backed up, walking off the Blanton property. Dr. Blanton was arrested shortly thereafter.
Mrs. Blanton corroborated most of the testimony of the officers, but she denied that Officer Leahey had identified himself upon arrival. She also testified that her husband had a hearing impediment and probably would not have recognized Detective Scotti from his previous visit.
There was expert psychiatric testimony that Dr. Blanton was a paranoid schizophrenic and did not know right from wrong. That testimony was rebutted by another psychiatrist, who examined Dr. Blanton on the state's behalf.
Dr. Blanton was tried by the court without a jury and convicted of assaulting Detective Scotti with a deadly weapon, without intent to kill, in violation of Section 784.021, Florida Statutes (1977). He was *1273 sentenced to a mandatory minimum three year sentence pursuant to Section 775.087, Florida Statutes (1977), to be followed by two years probation. The trial court expressed concern about the fairness of the sentence and stated that he would not have imposed as severe a sentence had he not been legally bound to do so by the mandatory provisions of Section 775.087.
Initially, Dr. Blanton maintains that the state failed to establish one of the essential elements of the crime of aggravated assault, namely the existence of an act which creates a well-founded fear in another person that violence is imminent. He contends that the conditional nature of his threat precluded Detective Scotti's fear of imminent violence from being well founded.
In a case involving circumstances very similar to those involved herein, it has been held that the conditional nature of the accused's threat did not preclude the establishment of an aggravated assault. State v. Smith, 348 So.2d 637 (Fla.2d DCA 1977). The lower court had held that the statement, "You step foot inside this house and I'll shoot you," addressed to police officers, was a conditional threat and therefore dismissed the case. The Second District reversed, stating:
In our view the nature of the threat as conditional should have been regarded as evidence going to the issue of whether Deputy Rolling had a well-founded fear that violence was imminent. Though the conditional nature of the threat may well have lessened the probability that Deputy Rolling had a well-founded fear, the evidence was not such that the trial court could have concluded, as a matter of law, that Rolling did not have such a well-founded fear. (footnote omitted)
Likewise, we believe here that the court's finding that Dr. Blanton's conditional threat and pointing of a shotgun placed Detective Scotti in fear of imminent harm, was not contrary to the law and was sufficiently supported by the evidence.[1] In our view the facts of this case would support an even greater fear of imminent peril than the facts involved in Smith. In Smith the officers were told that they would be shot only if they entered the defendant's home. In other words, the officers would not be harmed if they simply stayed where they were. Here, the officers' safety was jeopardized if they stayed where they were; they were told their heads would be blown off unless they left the property. Since Dr. Blanton appeared to have the capability to carry out his threat immediately, it certainly cannot be said that Detective Scotti could not have a well-founded fear that he was about to be shot.
Dr. Blanton also relies on the case of Bailey v. State, 76 Fla. 230, 79 So. 639 (1918) for the proposition that a conditional threat does not support a well founded fear of harm. However, it appears that assault as defined in Bailey and assault as defined by the legislature are not exactly the same. Assault as defined by Section 784.011, Florida Statutes (1977) consists of an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent. This is not the same offense as that described in Bailey:
An assault is an intentional attempt by violence to do an injury to the person of another. There must be an attempt to carry the intention into immediate execution, else it falls short of an actual assault.
The Bailey opinion does not address the issue raised by appellant herein and we do not believe Bailey is controlling.
Dr. Blanton also claims that the officers were trespassers and that he was not aware of their identities. However, there is evidence to support the trial court's findings to the contrary.
*1274 It is next contended that the court's application of the minimum mandatory sentence provision of Section 775.087(2), Florida Statutes (1977) unlawfully enhanced Dr. Blanton's punishment and such application is therefore unconstitutional. First, we note that these two issues were not properly preserved for appellate review. These issues were not raised in the court below until after an appeal had been filed. Both issues were raised in post-trial motions filed in the trial court during the pendency of this appeal. Although it is true that in each instance this court granted motions to temporarily relinquish jurisdiction to the trial court so the appellant could proceed on his motions, our orders in no way relieved the appellant from filing a notice of appeal from any subsequent orders entered on such motions.
In addition we note that the Supreme Court has specifically upheld the constitutionality of Section 775.087(2) in Sowell v. State, 342 So.2d 969 (Fla. 1977). Also see Rummell v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Thus, even if the matter were properly before us, we would be bound by the Sowell decision to uphold the statute. Under Sowell, the remedy of the appellant, if indeed any remedy is available as to the alleged unfairness of the mandatory sentence imposed, rests with the legislature and not the courts. State v. Sesler, 386 So.2d 293 (Fla.2d DCA 1980).
As to the issue of enhancement, it is clear that the two subsections of Section 775.087 serve two different functions. Subsection (1) provides for reclassification of a felony to a higher degree where a weapon or firearm was used and the use of the weapon has not already resulted in the offense being upgraded to a higher degree. Dr. Blanton is correct in asserting that subsection (1) cannot apply to the crime of aggravated assault since aggravated assault itself carries a higher punishment because of the use of a weapon. See Williams v. State, 358 So.2d 187 (Fla. 4th DCA 1978). However, subsection (2) does not increase the punishment but rather provides for mandatory minimum imprisonment for a person who has been convicted of aggravated assault while possessing a firearm. It does not reclassify the offense to a higher degree or authorize any greater maximum penalty for the crime of aggravated assault, which remains a third degree felony punishable by a maximum term of imprisonment of five years.
Accordingly, the judgment and sentence of the trial court are affirmed.
LETTS, C.J., and GLICKSTEIN, J., concur.
NOTES
[1] "If a defendant states that he will inflict an injury unless the victim complies with a certain condition, which he has no right to impose, an assault is committed whether or not the victim complies with the condition." 2 Wharton, Criminal Law, p. 304 (14th Edition 1979).