410 So.2d 961 (1982)
DEAN WITTER REYNOLDS, INC., F/K/a Dean Witter & Co., Inc., and Reginald Wagner, Appellants,
v.
Dr. Samuel LESLIE and Margaret Leslie, His Wife, and Gregory Mirabile and Barbara Mirabile, His Wife, Appellees.
Nos. 79-701, 79-1539.
District Court of Appeal of Florida, Third District.
March 2, 1982.
Rehearing Denied March 29, 1982.
*962 Bailey & Dawes, Miami, and Steven M. Meyers, Miami Beach, for appellants.
Gilbride & Heller and James F. Gilbride, Miami, for appellees.
Before HUBBART, C.J., and SCHWARTZ and FERGUSON, JJ.
HUBBART, Chief Judge.
This is an appeal from a final judgment in favor of the plaintiff stock investors entered upon a jury verdict in a negligence and fraud action brought against a stockbrokerage firm and one of its employee managers. An appeal is also brought from a final summary judgment barring recovery on the defendant stockbroker's indemnity and contribution claim. For the reasons which follow, we affirm the judgments appealed from in all respects.

I
The facts of the case are as follows. The defendant Dean Witter Reynolds, Inc. is a nationwide stockbrokerage firm which employs the defendant Reginald Wagner as a branch manager of its Fort Lauderdale, Florida office. On April 13, 1977, the defendant Wagner discovered that one of his subordinates, an account executive in the Fort Lauderdale office by the name of Gregory Mirabile, had purchased $62,000 of stock options from the defendant Dean Witter Reynolds, Inc. with checks which had been returned from the bank for insufficient funds. The defendant Wagner, understandably upset with this defalcation by one of his subordinates, gave Mr. Mirabile until 4:00 p.m. that day to make good on the checks or Mr. Mirabile would be fired and the matter would be turned over to the authorities.
Subsequently that day, prior to 4:00 p.m., the plaintiff Dr. Samuel Leslie, Mr. Mirabile's father-in-law, stepped forward to make good on the $62,000 of worthless checks written by Mr. Mirabile. The plaintiff Dr. Leslie had a telephone conversation that day with the defendant Wagner confirming this fact. Dr. Leslie further testified as to the balance of this telephone conversation as follows:
"[I] said to Mr. Wagner, `Mr. Wagner, if I come up with the money, I expect certain things from you. One, you're not going to fire Greg. Two, you're not going to the authorities. Three, you're to transfer the securities from Greg's account to my account. And, four, since I don't know anything about options and you're the expert, I want you to follow the options *963 and to sell them at the most opportune time so I wouldn't lose any money or as little as possible.'"
Dr. Leslie also testified that the defendant Wagner agreed to these conditions.[1] The $62,000 was subsequently remitted by the plaintiff Dr. Leslie to the defendant Wagner prior to 4:00 p.m. that afternoon.
From that point on, the defendant Wagner managed the stock options in question over a period of several months for the plaintiff Dr. Leslie and his wife, the plaintiff Margaret Leslie, which stock options were transferred from Mr. Mirabile to the account of Dr. and Mrs. Leslie. Moreover, no one else had any responsibility to manage or to assist in managing this stock option account. Eventually, the plaintiffs lost all their money ($62,000) on these stock options when the market gradually dropped over a period of several months rendering the options worthless. During this time, the record reveals that the defendant Wagner, in effect, let the account lie fallow without exercising his discretion to sell the options  although he had ample opportunity to sell said options at little or no loss to the Leslies. Indeed, the plaintiff Dr. Leslie had told the defendant Wagner at one point that he could sell the options at a $5,000 or $6,000 loss, but the defendant Wagner declined to do so.
Moreover, the record reveals that the defendant Wagner made no effort during the months which he managed the account to contact the plaintiff Dr. Leslie to advise him of this slow drop in the stock options market and, indeed, refused phone calls and a personal visit by Dr. Leslie's daughter Barbara Mirabile, inquiring as to the status of the account  although Dr. Leslie had informed the defendant Wagner that his daughter Barbara was to be his agent for the purpose of delivering messages on the status of the account. Finally, the record reveals that several options were in fact sold by the defendant Wagner, but apparently for no profit.
The plaintiffs Dr. and Mrs. Leslie filed suit in the trial court against the defendant Wagner and his employer the defendant Dean Witter Reynolds, Inc. in several counts sounding in fraud and negligence for the alleged mismanagement of the discretionary stock option account. Appropriate answers were filed by the defendants denying liability. The defendant Dean Witter also filed a third party complaint for indemnity and contribution against Gregory Mirabile and Dr. Leslie's daughter, Barbara Mirabile. Upon proper motion, the trial court entered a final summary judgment barring the indemnity and contribution claim. The case subsequently went to jury trial on the main claim resulting in a general jury verdict awarding the plaintiffs $62,855 in compensatory damages and $69,855 in punitive damages as against both defendants in this cause. This appeal follows.

II
The defendants raise a plethora of points seeking reversal of the final judgments appealed from on the main claim and the third party claim. We have concluded, however, after a meticulous examination of the record, the briefs and the applicable law, that none of these points merit a reversal.

A
The defendants first contend that the trial court erred in sending the case to the jury on the fraud count. No complaint, however, is made as to the trial court's decision to send the negligence counts to the jury. As the jury returned a general verdict in the plaintiffs' favor, it is, therefore, plain that the verdict and judgment must be sustained on the basis of the "two issue" rule. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978); Variety Children's Hospital, Inc. v. Perkins, 382 So.2d 331 (Fla. 3d DCA 1980). Moreover, it *964 cannot be said that the defendants here took themselves out of this rule by objecting, after closing argument and the court's charge to the jury, to the general verdict form used in this cause as on identical facts the Florida Supreme Court has held that this objection comes too late to avoid application of the "two issue" rule. Whitman v. Castlewood International Corp., 383 So.2d 618 (Fla. 1980).[2]

B
The defendants next contend that it was error to send the claim for punitive damages to the jury because, it is asserted, this is a breach of contract action for which, concededly, punitive damages are not ordinarily recoverable. Griffith v. Shamrock Village, Inc., 94 So.2d 854, 858 (Fla. 1957). The fatal flaw in this analysis, however, is that this is not in any sense a breach of contract action; it is a negligence and fraud action which was pled and tried below as such. It may not now, in our view, be recharacterized on appeal in an effort to avoid the punitive damages award.
It is further asserted that no evidence of an independent tort was shown in this case which would justify a punitive damages award. We are favored with no analysis as to why this is so, but, apparently, based on arguments made elsewhere, it is urged here that no evidence of fraud was presented in support of the fraud count pled herein. The fatal flaw in this position, however, is that evidence of gross negligence was adduced below in support of the negligence counts pled herein, which evidence by itself can sustain a punitive damages award.
The law is well-settled that "[e]xemplary damages are given solely as a punishment where torts are committed with fraud, actual malice or deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221 (1936). The evidence in this record is, we think, abundantly sufficient for the jury to have concluded, as it did, that the defendant Wagner acted "with such gross negligence as to indicate a wanton disregard of the rights of others." The record reveals with unmistakable clarity that the defendant Wagner totally neglected the plaintiff's stock option account, that he let the subject stock options slowly decline on the market over a period of several months until the options were worthless, that he made no effort during this time to sell the options although he had the discretion to do so, and that he made no effort, indeed, declined, to keep the plaintiffs apprised as to any developments in the account including the slow market decline thereon. It is difficult to imagine a set of facts wherein a stockbroker could have acted with any greater degree of gross negligence as to indicate a wanton disregard of the rights of his client.
We deal here, in our view, with an "entire want of care or attention to duty," a "great indifference to the persons, property or rights of others," which has long been sufficient to justify a punitive damages award. Griffith v. Shamrock Village, Inc., 94 So.2d at 858. Indeed, similar acts of gross negligence have been held sufficient, in prior cases, to justify a punitive damages award. Griffith v. Shamrock Village, Inc., *965 94 So.2d 854 (Fla. 1957) (negligent failure to deliver a phone message held sufficient to reverse the trial court's refusal to send punitive damages claim to jury); Hanft v. Southern Bell Telephone & Telegraph Co., 402 So.2d 453 (Fla. 3d DCA 1981) (negligent failure of telephone company to list a physician in the Yellow Pages for two successive years held sufficient to justify punitive damages award). For these reasons, then, we reject the defendants' attack on the punitive damages award herein.[3]

C
The defendants next present a series of contentions, which we have found somewhat difficult to follow, variously attacking, in general terms, the jury instructions given by the court, other jury instructions which the court refused, and the summary judgment entered on the third party claim, all of which, it is said, directed a verdict, in effect, against the defendants' asserted "defenses" below.[4] All of these contentions, however, rest on an erroneous premise which the trial court properly rejected. That premise is that Gregory and Barbara Mirabile were, in part, responsible for the losses which the plaintiffs suffered in this case and that they jointly and severally breached some duty owed either to the defendants or the plaintiffs which contributed to these losses. We find no merit in any of these contentions and are cited to no authority to support, on this record, an arguable duty owed by the Mirabiles to either the Leslies or the defendants, which caused, even in part, the losses in this case; indeed, the record establishes without contradiction that Gregory and Barbara Mirabile had no responsibility whatever to manage the Leslies' stock option account and cannot, in any sense, be held responsible, even in part, for the gross mismanagement of that account.

D
Finally, we have examined the remaining contentions made by the defendants on this appeal and find no reversible error in any of these points. The judgments under review by this appeal are, accordingly,
Affirmed.
NOTES
[1] The defendant Wagner gave a somewhat different version of this telephone conversation in which he said he agreed to handle the stock options account, but not as a discretionary stock account; otherwise, he said, he did agree to Dr. Leslie's conditions as stated above. The jury, as it had a right to do, obviously chose to believe Dr. Leslie's testimony on the subject telephone conversation.
[2] reject the contentions that there was a proper request for a special verdict and a proper objection to the general verdict form. No special verdict, interrogatories or requested written instructions were submitted to the court at the close of the evidence and before the instruction conference, as required by Florida Rule of Civil Procedure 1.470(b). Instead, the request for a special verdict was made after argument by counsel to the jury and after instructions on the law by the court.
* * * * * *
Special verdicts or interrogatories necessarily require explanatory instructions to the jury. In order to properly object to a general verdict form, counsel must therefore submit a special verdict form together with the necessary explanatory instructions in accordance with Florida Rule of Civil Procedure 1.470(b). In the instant case, the request for special verdicts and the implied objection were neither timely nor properly presented to the court." Whitman v. Castlewood International Corp., 383 So.2d at 619-20.
[3] We have no occasion to determine whether Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981), decided long after the trial proceedings below, has any application herein as the point involved in that decision was, understandably, not raised at either the trial or appellate level in this cause. See Jessup v. Redondo, 394 So.2d 1031, 1033 (Fla. 3d DCA 1981).
[4] These "defenses," variously described in terms of comparative negligence by alleged agents Gregory and Barbara Mirabile, were never pled below as affirmative defenses. Moreover, the trial court denied a defense motion at the close of the evidence to amend the affirmative defenses to include these defenses, and the defendants have not attacked this ruling on appeal. This would appear to undercut on procedural grounds most of the defendants' substantive arguments here, but we have nonetheless resolved to address those arguments on the merits.