489 So.2d 761 (1986)
DEAN WITTER REYNOLDS, INC., Appellant,
v.
Collin R. HAMMOCK, Appellee.
Nos. BE-226, BE-470 and BF-411.
District Court of Appeal of Florida, First District.
April 4, 1986.
On Motion for Rehearing June 13, 1986.
*762 Thomas M. Baumer and Michael G. Tanner, of Gallagher, Baumer, Mikals, Bradford, Cannon & Walters, P.A., Jacksonville, for appellant.
John C. Taylor, Jr., of Taylor, Day, Rio & Mercier, Jacksonville, for appellee.
JOANOS, Judge.
This is a combined appeal and cross appeal from a final judgment which awarded compensatory damages, attorney's fees, and costs to Collin R. Hammock (Hammock), appellee/cross appellant. Appellant Dean Witter Reynolds, Inc. (DWR) raises three points for review: (1) the denial of DWR's motion for judgment notwithstanding the verdict with respect to DWR's claim against Hammock, (2) the denial of DWR's motion for judgment notwithstanding the verdict with respect to Hammock's claim, and (3) the assessment of attorney's fees and costs against DWR. Appellee/cross appellant Hammock also presents three points for review: (1) the directed verdict against Hammock on the punitive damages claim in his counterclaim, (2) the exclusion of DWR's in house manuals and procedures from evidence, and (3) the directed verdict on Count I of Hammock's counterclaim. We affirm in part and reverse in part.
DWR's complaint against Hammock alleged that Hammock executed and then breached a customer agreement entered into with DWR in which DWR was to provide brokerage services to Hammock for trading in commodity futures. Under the terms of the agreement, DWR was authorized to advance sums to Hammock's account, and Hammock was liable for all sums advanced. According to DWR, it advanced $125,437.30 to Hammock to cover losses sustained by him as a result of his trading activities, and Hammock had failed to pay the monies advanced.
Hammock answered the complaint and filed a four-count counterclaim. Count I of the counterclaim alleged that DWR breached the customer's agreement by violating the rules and regulations of the commodities exchanges. Count II alleged that Stephens, DWR's account executive, defrauded Hammock by failing to disclose the risks inherent in trading silver futures. Count III alleged that DWR "churned the account," i.e., engaged in excessive trading in the account in order to generate commissions, in violation of the anti-fraud provisions of the Commodity Exchange Act (CEA).[1] Count IV alleged that DWR was negligent in the supervision and handling of Hammock's account. In Counts II-IV, Hammock sought compensatory and punitive damages.
The record indicates that Hammock encountered difficulty in obtaining discovery from DWR. For example, DWR failed to produce equity runs and the original of the commodity account application sought by Hammock until ordered by the court to do so, and threatened by the court with sanctions for failure to comply. In all, Hammock's counsel presented eleven separate requests for production and ten motions to compel discovery. The two most sought-after documents were the original of the application and a memo authored by G.W. Miller relating to DWR's policies with regard to suitability of a client to engage in commodities trading, the trading limits on accounts, and the margin requirements. After DWR represented that neither document could be located, the trial court directed DWR to furnish Hammock with names of employees who had any responsibility for the care and custody of the G.W. Miller memo and to produce for deposition in New York any of those named individuals. Pursuant to the trial court's order, Hammock's counsel took the depositions of two DWR vice-presidents. Joseph Greenberg, vice-president of DWR's corporate credit department, stated that on September *763 18, 1984, he was advised by DWR's Jacksonville attorneys that the original of the account application had been requested. On that same day, Greenberg sent the requested document to Jacksonville.[2]
Similar circumstances surrounded the production of the G.W. Miller memo. Wendy Goetz, assistant vice-president of DWR's compliance department, stated that on September 20, 1984, she was asked to find the G.W. Miller memo. She located a copy of the memo in files that had been maintained by her predecessor. Prior to September 20, 1984, neither she nor anyone else in her department had been asked to locate the memo. Ms. Goetz found the memo within fifteen minutes of receipt of the request. According to Ms. Goetz, the policy and procedures set forth in the memo have not been superseded; rather, they have been translated into the firm's policy and procedure manual, CMY2, which was published in October 1981.
On October 3, 1984, Hammock's counsel filed a motion for contempt and for assessment of attorney's fees. The case was tried before a jury on October 22-26, 1984.
The jury was presented with evidence which, if viewed in a light favorable to appellee, as we are required to view it on this appeal, would support the following:
(1) Hammock had limited investment experience, and his knowledge of the silver market had been obtained by reading articles, library books, and stock exchange brochures;
(2) Hammock, with a high school education and work experience as mechanic, truck driver, and contractor, was an unlikely candidate for successful trading in the highly speculative area of silver futures;
(3) Hammock's investment funds were the result of a personal injury settlement arising from an accident on an offshore oil rig which left his right arm totally disabled, and precluded his future employment as a mechanic;
(4) Hammock advised DWR's account executive that $40,000 was the maximum amount he was willing to invest;
(5) Hammock was influenced by DWR's account executive to change his investment plan from long-range trading, i.e., buying silver contracts to hold as long as possible, to daytrading in which a contract is bought and sold the same day;
(6) the account executive filled out the account application forms with false information regarding Hammock's employment status and income;
(7) DWR's account executive greatly understated the potential losses that could be incurred in daytrading;
(8) DWR's account executive never advised Hammock that he had not deposited the correct margin amounts to cover the trading in his account;
(9) responsibility for supervision of Hammock's account was confused and well nigh non-existent;
(10) in a five day period, trading in the account generated $30,800 based on 270 contracts.
At the conclusion of Hammock's case, DWR moved for a directed verdict with respect to portions of Hammock's counterclaim. The trial court granted the motion with respect to Count I, and with respect to all claims for punitive damages in Counts II, III, and IV.
The jury returned a verdict in favor of Hammock with respect to DWR's claim, and in favor of Hammock on his counterclaim. Hammock's damages were assessed at $40,000, which is the amount that Hammock had deposited with DWR to open the account. In the final judgment, the trial *764 court awarded Hammock compensatory damages in the amount of $40,000, and retained jurisdiction for the purpose of taxing costs against DWR. DWR moved for new trial or judgment notwithstanding the verdict, and Hammock moved for new trial on the issue of punitive damages. Both motions were denied; both parties appealed.
Subsequently, a hearing was held on Hammock's motion for contempt and assessment of attorney's fees. The trial court found the documents sought by Hammock had been located by DWR precisely where they were supposed to be  despite DWR's numerous representations that they could not be located. Accordingly, the trial court found DWR had acted in bad faith and awarded attorney's fees and costs to Hammock. DWR appealed these final orders, and the three cases were consolidated for this appeal.
The first issue raised by DWR is the trial court's failure to grant DWR's motion for judgment notwithstanding the verdict with respect to its claim against Hammock to recover alleged losses incurred in Hammock's commodity trading account. Such a motion is governed by Florida Rule of Civil Procedure 1.480(b), which provides:
When a motion for a directed verdict made at the close of all of the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict or if a verdict was not returned, such party may move for judgment in accordance with the motion for a directed verdict within ten days after the jury has been discharged.
The failure to make a motion for directed verdict at the close of all the evidence will preclude consideration of a motion for judgment notwithstanding the verdict, i.e., motion for judgment in accordance with motion for directed verdict. Hall v. Ricardo, 331 So.2d 375 (Fla. 3rd DCA 1976). In Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88, 90 (Fla. 1985), the supreme court reaffirmed the principle set forth in 6551 Collins Avenue Corp. v. Millen, 104 So.2d 337 (Fla. 1958), holding that "one who submits his cause to the trier of fact without first moving for directed verdict at the end of all evidence has waived the right to make that motion." And in Lee County Oil Company v. Marshall, 98 So.2d 510, 512-513 (Fla. 1st DCA), cert. denied 101 So.2d 819 (Fla. 1958), this court held that one who failed to move for a directed verdict at the close of all the evidence 
cannot now be heard to question the sufficiency of the evidence upon which the jury based its verdict. Under such circumstances, an appellate court is precluded from reviewing the sufficiency of the evidence for the reason that the question was not presented to the trial court or reserved during trial, and consequently no error can be attributed to the court for failing to withdraw the case from the jury.
Accord: Honda Motor Co., Ltd. v. Marcus, 440 So.2d 373 (Fla. 3rd DCA 1983); Keyes Company v. Shea, 372 So.2d 493 (Fla. 4th DCA 1979); Laird v. Potter, 367 So.2d 642 (Fla. 3rd DCA 1979); Hall v. Ricardo, supra.
An order granting or denying a motion for judgment notwithstanding the verdict "should be tested by the rules applicable to motions for directed verdict." McCabe v. Watson, 225 So.2d 346, 347 (Fla. 3rd DCA 1969). That is, such motions "should be cautiously granted, and only when the court, after viewing the evidence and testimony in a light most favorable to the nonmoving party, concludes that the jury could not reasonably differ as to the existence of a material fact or material inference, and that the movant is entitled to the judgment as a matter of law." Thus, a trial court "is not warranted in withdrawing the case from the jury ... unless the evidence as a *765 whole with all reasonable deductions to be drawn therefrom, points to but one possible conclusion." Nelson v. Ziegler, 89 So.2d 780, 782 (Fla. 1956). See also: Stirling v. Sapp, 229 So.2d 850 (Fla. 1969); McCray v. Allstate Insurance Company, 374 So.2d 1077 (Fla. 1st DCA 1979).
Our examination of the record in the instant case demonstrates that DWR failed to move for a directed verdict on its claim against Hammock. We conclude, therefore, that DWR waived its right to have the trial court consider its motion for judgment notwithstanding the verdict. By this decision we do not intend to imply that had DWR reserved its right to move for judgment notwithstanding the verdict, a reversal on this point would be indicated. Instead, we find the trial court properly denied the motion since the evidence in this case, when taken as a whole, did not warrant withdrawing the case from the jury.
The second issue raised by DWR is the trial court's failure to grant DWR's motion for judgment notwithstanding the verdict with respect to Hammock's counterclaim. The trial court dismissed Count I of the counterclaim. In the counts remaining, Hammock alleged that DWR violated the antifraud provisions of the CEA, that DWR churned the account, and that DWR failed to disclose material information. DWR contends that the evidence will not support a finding that it acted fraudulently, churned the account, or failed to disclose material information. Hammock counters DWR's contention with the assertion that the evidence was sufficient to support the jury's verdict under any of the theories submitted. Therefore, under the "two issue" rule, an affirmance is indicated.
The "two issue" rule provides:
where two or more issues are left to the jury, and of which [one] may be determinative of the case, and a general verdict is returned, making it impossible to ascertain the issue(s) upon which the verdict was founded ... reversal is improper where no error is found as to one of the issues, as the appellant is unable to establish that he has been prejudiced.
Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181, 1186 (Fla. 1978). See also: Dean Witter Reynolds, Inc. v. Leslie, 410 So.2d 961 (Fla. 3rd DCA 1982).
In this case, the jury instruction on the fraud count in Hammock's counterclaim tracked the language of § 6b of the CEA.[3] The trial court instructed the jury that, to find fraud, it must find that DWR's conduct was willful, with an intent to deceive, to cheat, or defraud, or to state untrue facts with reckless disregard to the truth or falsity. In addition, the jury was instructed that it must find that Hammock relied on the representations of DWR's agent, that his reliance was justified, and that any loss he suffered was a proximate *766 result of the willful, fraudulent, or deceitful conduct of Dean Witter.
We find this record contains substantial evidence which supports the jury's determination that Hammock's account had been negligently supervised, that the account had been churned, and that Hammock had been misled with regard to the possible losses attendant upon daytrading in silver futures. We conclude, therefore, that the trial court did not err in denying DWR's motion for judgment notwithstanding the verdict with respect to Hammock's counterclaim.
The final issue raised by DWR is the award of attorney's fees and costs to Hammock. DWR argues its conduct did not rise to the level of flagrant bad faith or willfulness which would justify such sanctions. We disagree. Florida Rule of Civil Procedure 1.380(b)(2)(F) provides that, in the event of violation of a discovery order, "the court shall require the party failing to obey the order to pay the reasonable expenses caused by the failure that may include attorney's fees, unless the court finds that the failure was justified ..." In Mercer v. Raine, 443 So.2d 944 (Fla. 1983), the supreme court affirmed a trial court's order awarding attorney's fees and costs as a sanction for discovery violations. In finding the trial court had not abused its discretion, the court quoted from Farish v. Lum's Inc., 267 So.2d 325 (Fla. 1972), in which the court said:
The exercise of discretion by a trial judge who sees the parties firsthand and is more fully informed of the situation, is essential to the just and proper application of procedural rules. In the absence of facts showing an abuse of discretion, the trial court's decision excusing, or refusing to excuse, noncompliance with rules ... must be affirmed. It is the duty of the trial court, and not the appellate courts, to make that determination.
We find no abuse of discretion in the award of attorney's fees and costs in this case, and affirm on this point as well.
We turn now to the points raised by Hammock on his counterclaim. First, Hammock urges the trial court erred in directing a verdict against him on his claim for punitive damages. We agree. In Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1207 (9th Cir.1982), the court affirmed an award of punitive damages under the antifraud provisions of section 4b of the CEA, based on a jury instruction that "to award punitive damages intentional or reckless conduct was required." The recklessness which will impose liability under the CEA was defined in First Commodity Corporation v. Commodity Futures, Etc., 676 F.2d 1 (1st Cir.1982), as a "lesser form of intent." See: Sanders v. John Nuveen & Co., Inc., 554 F.2d 790, 793 (7th Cir.1977). In other words,
A "reckless" misrepresentation is one that departs so far from the standard of ordinary care that it is very difficult to believe the speaker was not aware of what he was doing. Indeed, Prosser suggests that to act "recklessly" is to act "in disregard of a risk so obvious" that the "actor must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." W. Prosser, Law of Torts 185 (4th ed. 1971).
First Commodity Corp., 676 F.2d at 6-7.
The amendment to the CEA which limited recovery on actionable transactions governed by the Act to "actual damages," was not in effect at the time of the futures trading which is the subject of this appeal. Subsection (d) of 7 U.S.C.A. § 25 provides:
The provisions of this section shall become effective with respect to causes of action accruing on or after the date of enactment of the Futures Trading Act of 1982 [January 11, 1983]: Provided, That the enactment of the Futures Trading Act of 1982 shall not affect any right of any parties which may exist with respect to causes of action accruing prior to such date.
Thus, there was no statutory bar to an award of punitive damages in 1982, the time when this cause arose.
*767 Under Florida law punitive damages may be awarded "where torts are committed in an outrageous manner or with fraud, malice, wantonness or oppression." Wackenhut Corporation v. Canty, 359 So.2d 430, 435-436 (Fla. 1978), citing Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 222 (1936). The purpose of punitive damages awards is to act as deterrence and punishment, in other words, "to vindicate wrongs arising from antisocial behavior." Campbell v. Government Employees Insurance Company, 306 So.2d 525, 531 (Fla. 1974). An employer may be liable for punitive damages without a showing of the willful and wanton conduct required for an award of punitive damages against the employee, although there must be some fault on the part of the employer. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 549 (Fla. 1981).
In Walsh v. Alfidi, 448 So.2d 1084 (Fla. 1st DCA 1984), this court found the trial court erred in taking a punitive damages claim from the jury, since there was sufficient evidence for the jury to find that Alfidi had made intentional misrepresentations which Walsh had relied upon to her detriment. When there is evidence of fraud, whether the "fraudulent act is `sufficiently outrageous so as to justify an award of punitive damages is a question for the jury.' Schief v. Live Supply, Inc., 431 So.2d 602 (Fla. 4th DCA 1983)." Walsh v. Alfidi, at 1087. Since the trial judge in Walsh found sufficient evidence to warrant presenting the fraud claim to the jury, this court reversed for new trial on the issue of punitive damages only, finding that "[s]uch acts of fraud form the legal basis for an award of punitive damages; therefore, it was for the jury, not the trial judge, to determine whether punitive damages should be awarded." Id.
In this case, Hammock's claim for punitive damages was predicated on the allegedly fraudulent conduct of DWR's account executive, and the negligent failure of DWR to supervise the account executive's management of the account. We conclude this record contains sufficient evidence to warrant presenting the punitive damages claim to the jury. Therefore, we find the trial court erred in directing a verdict on the punitive damages issue.
The second point raised by Hammock is the trial court's refusal to admit into evidence DWR's in-house manuals regarding its standards for supervision of commodity trading accounts, as well as documentary evidence and expert testimony regarding DWR's violations of suitability standards. DWR argues strenuously here, as it did before the trial court, that there is no private cause of action for violation of a firm's internal policies. Hammock counters that his action was based on negligence, and urges evidence of violation of DWR's in-house regulations is admissible as evidence of negligence. Again we agree.
Case law is clear that evidence of violation of industry standards is admissible as non-conclusive evidence of negligence. St. Louis-San Francisco Railway Company v. White, 369 So.2d 1007 (Fla. 1st DCA 1979). See also: St. Louis-San Francisco Railway Company v. Burlison, 262 So.2d 280 (Fla. 1st DCA 1972); Clements v. Boca Aviation, Inc., 444 So.2d 597 (Fla. 4th DCA 1984); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075 (Fla. 3rd DCA 1983); Reese v. Seaboard Coast Line Railroad Company, 360 So.2d 27 (Fla. 4th DCA 1978). Therefore, we find the trial court erred in excluding evidence relating to industry standards generally and DWR's procedures and policies.
Hammock's final point concerns the directed verdict on Count I of his counterclaim. Hammock urges that, contrary to the view taken by the trial court, his Count I claim was dependent upon DWR's contractual agreement to permit Hammock to make only those investments that were suitable for him. This point has been mooted by our decision on the other points raised in this appeal, therefore we do not address it.
We affirm the trial court's ruling as to the points raised by DWR, and reverse the trial court's rulings on Hammock's counterclaim *768 for punitive damages and exclusion of evidence concerning DWR's in-house rules and policies.
Reversed and remanded for new trial on the issue of punitive damages, at which trial evidence regarding DWR's suitabililty requirements and in-house procedures shall be received into evidence.
SMITH and WENTWORTH, JJ., concur.

ON MOTION FOR REHEARING
JOANOS, Judge.
In its motion for rehearing Dean Witter Reynolds, Inc. suggests that we have misapprehended the holding of the Ninth Circuit Court of Appeals in Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1207 (9th Cir.1982), and interprets our citation to that case as standing for the proposition "that punitive damages are available under the CEA." We recognize that the punitive damages award in Kotz was assessed under Arizona state law, just as our opinion recognized that Hammock was entitled, under Florida law, to have his punitive damages claim go to the jury.
To clarify any ambiguity our brief reference to Kotz may generate, the sentence at page 13 of the opinion which begins "In Kotz v. Bache Halsey Stuart, Inc., ..." is amended to provide:
In Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1207 (9th Cir.1982), the court affirmed an award of punitive damages with the observation that the jury had been instructed that "to award punitive damages intentional or reckless conduct was required." The court found this instruction would support a finding of liability under the anti-fraud provisions of section 4b of the Commodities Exchange Act.
In all other respects the motion for rehearing is denied.
SMITH and WENTWORTH, JJ., concur.
NOTES
[1] 7 U.S.C.A. s. 6b (West 1980).
[2] Hammock had requested the document on April 17, 1984; on April 18, 1984, DWR responded, stating that it would produce the document. On July 6, 1984, Hammock filed a motion to compel discovery, alleging that the documents requested on April 17, 1984, had not been produced despite further requests by Hammock's counsel. On July 9, 1984, the motion to compel was granted and DWR was given fifteen days to produce the originals of the commodity account application non-trade. When Hammock's counsel was given leave to depose DWR personnel in New York, the document was immediately "located".
[3] 7 U.S.C.A. § 6b provides in relevant part:

s. 6b. Contracts designed to defraud or mislead; bucketing orders; buying and selling for commodities
It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for furture delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof 
(A) to cheat or defraud or attempt to cheat or defraud such other person;
(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;
(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; ...