610 So.2d 711 (1992)
Andrew STOKES, Appellant/Cross Appellee,
v.
Donald W. RUTTGER, Appellee/Cross Appellant, and
McDonough Power Equipment, Inc., Snapper Power Equipment, Inc. and Fuqua Industries, Inc., Appellees.
Nos. 90-1948, 90-2865.
District Court of Appeal of Florida, Fourth District.
December 23, 1992.
R. Fred Lewis of Magill & Lewis, P.A., Miami, for appellant/cross appellee.
Linda R. Spaulding of Conrad, Scherer & James, Fort Lauderdale, for appellee/cross appellant.
DELL, Judge.
Appellant, Andrew Stokes, suffered an almost complete traumatic amputation of his right ankle and foot while operating a lawn mower on appellee's property. He sued appellee and claimed appellee negligently failed to maintain his premises in a reasonably safe condition, failed to correct a dangerous condition and failed to warn him of the dangerous condition. The jury found appellant and appellee each fifty percent negligent and that appellant sustained damages in the amount of $306,000. Appellant contends the trial court erred when it entered a judgment notwithstanding the verdict in favor of appellee. We agree and reverse.
Appellant had maintained appellee's lawn for approximately twenty years. In September, 1983, appellant suffered an almost complete traumatic amputation of his right ankle and foot when the left rear wheel of his riding lawn mower fell into a hole along appellee's seawall. The mower tilted towards the water whereupon appellant became frightened and jumped from the mower towards the land. The mower righted itself and fell on appellant's right leg severing his foot at the ankle. Appellant sustained approximately $43,000 in medical bills for the reattachment and treatment of his foot.
Appellant testified he neither saw the hole before the accident nor had ever seen any holes along the seawall on any prior occasions. He stated appellee had never warned him about any holes along the seawall. *712 Appellee claimed he thought he had given such a warning to appellant. Although appellant could not testify he saw the actual hole that allegedly caused his accident, one of his employees stated he saw a hole along the seawall where the accident occurred immediately following the accident. The employee described the hole as approximately four by seven inches and "kind of deep." He stated he had been along the seawall before the accident but had never seen any holes there and explained the hole that he discovered was covered by grass. He also stated the hole appeared to have been washed out by water.
Appellee purchased the property in 1971 and had the seawall repaired in 1978, 1981 and 1983. He explained the formation of the holes along the seawall in the following manner:
I think the soil gradually washes out and possibly the sod holds, stays in place, but the sand is washed out underneath. Then suddenly the sod will collapse.
Robert Beller performed the repairs to the seawall by cleaning and sealing the T-pilings for the seawall and filling the holes along the seawall. In March, 1978, he sealed all thirteen T-pilings and filled seven large holes. In December, 1981, he sealed the thirteen T-pilings and filled four to six holes, and in December, 1983, he sealed the thirteen T-pilings and filled two holes. He told appellee this process was required every one and one-half to two years. He described appellee's location as a bad area and would not guarantee his work. He stated that depending on the size of the crack in the seawall, the tides and the wave action, a hole could develop in as little as thirty minutes.
Appellant presented an expert witness who testified holes along seawalls result from tidal action against the T-pilings which causes cracks and, in turn, erosion of the soil behind the wall. Based upon his examination of the area where the accident occurred, he opined a defect in the area of the T-pilings caused the hole into which appellant's mower fell. He stated the method used by appellee to repair the seawall and to fill the holes was an acceptable method but stated using concrete was a longer-lasting method. He agreed the method used by appellee would last approximately one and one-half to two years. He admitted holes could form in as little as five minutes but stated it was more probable the holes developed over a longer period. Although appellant's expert conceded crabs can cause holes, he testified erosion resulting from defective T-pilings caused the holes along appellee's seawall.
The trial court reserved ruling on appellee's motion for a directed verdict made at the close of appellant's case. The parties dispute whether appellee made a motion for a directed verdict at the close of all of the evidence. The trial court resolved this question in favor of appellee and granted appellee's motion for a judgment notwithstanding the verdict.
Appellant raises two points on appeal. He contends the trial court erred when it considered appellee's post-trial motions which included a motion for a directed verdict and motion for a judgment notwithstanding the verdict. He also contends the record contains sufficient evidence to sustain the verdict entered by the jury and that the trial court erred when it entered a judgment notwithstanding the verdict.
We find no error in the trial court's consideration of appellee's post-trial motion for a directed verdict and motion for a judgment notwithstanding the verdict. In 6551 Collins Ave. Corp. v. Millen, 104 So.2d 337 (Fla. 1958), the supreme court stated:
When a trial judge reserves his ruling on a motion for directed verdict made by defendant at the close of plaintiff's case and his reservation of decision is called to his attention and the motion renewed at the close of all the evidence  no matter how informally  it is clear that no charge of "waiver" can be made against the defendant.
Id. at 341 (citation omitted). See also Dean Witter Reynolds, Inc. v. Hammock, 489 So.2d 761, 764 (Fla. 1st DCA 1986) (an order granting or denying a motion for a judgment notwithstanding the verdict *713 should be tested by the rules applicable to motions for directed verdict).
We hold, however, that the trial court reversibly erred when it granted appellee's motion for a judgment notwithstanding the verdict. In Collins v. School Bd. of Broward County, 471 So.2d 560 (Fla. 4th DCA 1985), writ dismissed, 491 So.2d 280 (Fla. 1986), this court discussed the standard for review of an order granting a judgment notwithstanding the verdict:
When, after the entry of a jury verdict, the trial court grants a motion for judgment in accordance with the movant's prior motion for directed verdict, the ruling constitutes a deferred decision on the earlier motion for a directed verdict. Accordingly, our task in reviewing the propriety of an order granting such a motion is identical to that where an ordinary motion for directed verdict is involved. Presented with such a motion, the court must view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made. Similarly, every reasonable conclusion which may be drawn from the evidence must also be construed favorably to the non-movant. Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted. It goes without saying that a motion for directed verdict should be treated with special caution, and this is especially true in negligence cases where the function of a jury to weigh and evaluate the evidence is particularly important since reasonable people can draw various conclusions from the same evidence.
Id. at 563 (citations omitted). The evidence viewed most favorably to appellant shows appellee had notice of recurrent holes developing along his seawall due to defects in the T-pilings. In 1978 and 1981, he had had cracks in the seawall repaired and holes along the seawall filled. He never warned appellant that holes developed along the seawall. Appellant had never seen any holes along the seawall on any prior occasions, including the day of the accident. As appellant backed his mower, the left rear wheel fell into a hole adjacent to the seawall. The mower tilted and caused him to jump from it. The mower then fell and severed his right foot at the ankle.
After the accident, an employee observed a hole four by seven inches and "kind of deep" at the location where the mower tipped. Appellee knew the seawall would require repair on the average of every one and one-half to two years, and the accident occurred between one and one-half to two years after the last repair. Other than defective T-pilings and the concurrent cause of rain resulting in erosion of the soil behind the seawall, the only other causes offered for such holes were crabs and boats hitting the seawall. Neither appellee nor any other witness testified they had ever seen any crabs on appellee's property or any boats hit the seawall. Although appellant's expert admitted such holes could form in as little as five minutes, he testified it was more probable they developed over a longer period.
The record contains only circumstantial evidence of appellee's actual or constructive notice of the hole that caused appellant's injury. However, the lack of evidence concerning notice of the actual hole that caused the accident does not overcome appellee's failure to warn of the recurrent dangerous condition on his property. See Regency Lake Apts. Assocs., Ltd. v. French, 590 So.2d 970 (Fla. 1st DCA 1991). A jury could properly find from the evidence in the record that appellee had actual notice of the recurrent problem along his seawall and that his failure to warn of that dangerous condition constituted the legal cause of appellee's injuries. See Hall v. Holton, 330 So.2d 81 (Fla. 2d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977). A jury could also properly find from the evidence that appellee failed to maintain his premises in a reasonably safe condition because he failed to remedy the recurrent dangerous condition when approximately twenty-one months had elapsed since the last repair. See Stewart v. Boho, Inc., 493 So.2d 95 (Fla. 4th *714 DCA 1986); Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985), review denied, 482 So.2d 350 (Fla. 1986).
Accordingly, we reverse the trial court's order granting appellee's motion for a judgment notwithstanding the verdict and remand this cause with instructions for the trial court to reinstate the jury's verdict and to enter judgment in accordance therewith.
REVERSED and REMANDED.
GLICKSTEIN, C.J., and WARNER, J., concur.